WESTERN DIST.
October, 1831.

DRANGUET
ET ALS.
vs.
PRUDHOMME.

APPEAL FROM THE COURT OF THE SIXTH DISTRICT, THE JUDGE OF THE
FIFTH PRESIDING.

Where the wife sues to rescind a contract made by her on the ground that she was not duly and legally authorised to make it, she is not bound to prove she was not authorised. It is a negative proposition which throws the burthen of proof on the defendant.

There are negative propositions which can be proved ; such as proving a a man was not at a particular place on a certain day, by showing he was at another, so great a distance as to render it impossible to be at both ; or where the negative can be established by proving an affirmative inconsistent with it.

It is a general rule that he who affirms must prove ; but there are many negative propositions, which it is impossible to prove, such as the nonexistence or the non-performance of things, which in many instances defy all proof.

So when the wife, who is forbidden to contract, makes a contract without being authorised, and sues to set it aside because she was not authorised, it is impossible for her to prove she was not. It devolves on the opposite side to show that she was.

Celeste Dranguet with the authorisation of her husband, instituted her suit in July, 1829, to set aside the sale of a tract

of land to her by the defendant, on the ground that she had no authority to contract; and to recover a negro woman and certain sums of money given and received in payment.

In the absence of her husband, the defendant seized a tract of land belonging to him and sold it for seven hundred dollars. The wife purchased it from the defendant in July, 1824, for one thousand five hundred and eighty-five dollars with ten per cent. interest until paid; and giving a mortgage on the land and a negro woman. She paid three hundred dollars in money. But before the balance was paid, Prudhomme obtained an order of seizure and sale against the land and slave, and bought them in for five hundred and fifty dollars; leaving still a large balance due on the original purchase of the land.

The wife now sues to rescind this sale and recover back all the payments she had made, with the negro woman, on the ground that she had no legal authority to contract for the purchase of the land or to affect in any manner her paraphernal property from her husband or any other competent authority; and that the sale is void in law. The defendant alleged that Celeste Dranguet was authorised by the judge to contract, in the absence of her husband, that her husband had specially authorised her in writing to make this contract, and has ratified the purchase of the land. That the mortgages are extinguished, which were retained on the land and negro woman by the order of seizure and sale, which now forms *res judicata*. The negro woman has since been sold by him, and is now emancipated and out of his power. Prudhomme further alleges that the wife was separated in property from her husband in 1824, and that all her property, whether dotal or paraphernal, is liable for the purchase money of the land.

He also prays for judgment in reconvention for the balance of the purchase money on account of the sale of the land amounting to one thousand one hundred and sixty-two dollars and nineteen cents, with interest.

The plaintiff had judgment for the rescission of the sale, and the recovery of the three hundred dollars advanced in

WESTERN DIST.
October, 1831.

DRANGUET
ET ALS.
vs.
PRUDHOMME.

payment and five hundred dollars as the price of the negro woman sold, with six dollars per month hire until reimbursement of her price.

The defendant offered in evidence a general power of attorney executed by the husband and recorded in the parish judge's office, dated fourth of March, 1824, empowering the wife to make contracts and transact all necessary business for the protection and preservation of their property in his absence.

On the 28th of July, 1824, while her husband was absent at the Havana, Celeste Dranguet petitioned the parish judge of Natchitoches, to authorise her to sue and be sued, to appear in court and make all necessary contracts. The parish judge granted her request. No special authority was proved of the husband or the judge to the wife to contract in this particular case.

The defendant in conclusion alleges that the wife having asserted that she had no authority to contract or to make the purchase of the land in question, is bound to prove or show the negative of this proposition—that she had not.

*Fennessey,* for the plaintiffs, made the following points:

1. The wife cannot sue or be sued, nor contract without the authorisation of her husband. *Civil Code, page* 28, *article* 21–2. 2 *Touillier, page* 16, *numbers* 618, 632.

2. When the husband is absent, so that his authority could not be obtained, the wife should then make application to the judge. *Civil Code, page* 28, *articles* 23, 24, *and* 26. 2 *Touillier, page* 27, *numbers* 649, 654.

3. The application for authority to contract was made to the parish judge, who is incompetent to grant it, on the ground of a want of jurisdiction. For it will be seen their jurisdiction is limited to three hundred dollars and under, when in this case the contract exceeded one thousand five hundred dollars. 2 *Martin's Digest,* 222, § 9.

4. The cases in which the parish judge can act above his general jurisdiction of three hundred dollars, are those in which he is specially named as parish judge. 2 *Martin's*

WESTERN DIST.
October, 1831.

DRANGUET
ET ALS.
vs.
PRUDHOMME.

*Digest,* 456, § 17. 1 *do.* 698, 700, 712, 764, 456. *Civil Code,* page 30, *articles* 6, 10, 11 *and* 12 *page* 34, *articles* 18 *and* 19. 7 *Martin,* 274. 1 *Martin, N. S.* 201. 4 *Cranch,* 93.

5. The husband was not absent in contemplation of law. But admitting his absence, the proper means were not resorted to, to have him represented. *Civil Code, page* 16, *articles* 9 10. 1 *Touillier numbers* 385 to 389, 397—9. *Civil Code, page* 14, *article* 8. 1 *Toullier, numbers* 400 to 406.

6. The authority was general, and therefore void. *Civil Code, page* 28, *article* 26 *to* 27. 2 *Touillier, page* 22, *numbers* 637 *to* 648.

7. The husband and wife together, cannot dispose of dotal property, unless under certain restrictions. *Civil Code, page* 328, *articles* 36—41.

*Rost,* for the defendant, contended for the following principles in support of this case :

1. The plaintiff seeks to support her action on the fact that she was not duly authorised by the parish judge to contract with the defendant as she did. Under the Spanish and English law of evidence, there are negatives that must be proved by the party alleging them ; and this is one of them. 1 *Starkie,* 376. *Febrero, part* 3, *liber* 2, *chapter* 1, *numbers* 278—80.

2. Our present laws of evidence are in this respect the same as the law of France ; and under that system of jurisprudence Touillier considers it a settled principle that whoever alleges a negative must prove it, without exception. *Louisiana Code.*

3. There are, it is true, negative propositions, which referring to neither time, place nor any other circumstance are not susceptible of proof; but it is because they are indefinite, and not because they are negative, that they cannot be proved; and there are as many indefinite positive propositions, which, for the former reason cannot be proved. *Touillier, page* 19–20.

4. Negatives are a mere artifice of language ; and the same fact may often be expressed by a positive and by a negative proposition. One may plead in positive terms that

WESTERN DIST.
October, 1831.

DRANGUET
ET ALS.
vs.
PRUDHOMME.

he was a minor, or in negative terms that he was not of age : A public functionary may allege positively that he discharged the duties of his office gratis; or negatively that he was not paid : and yet, though the fact be the same in both cases, the burthen of the proof is thrown from one party to the other, according to the nature of the terms used in alleging it.

5. Since so many negative propositions can be expressed in positive terms, it is easy to conceive that our language might be guarded in such a manner, that every proposition that we call negative should be expressed by a single and positive word. There should be then no more negatives. This distinction would vanish, and whoever alleged a fact, would be compelled to prove it. And yet this radical innovation in the law of evidence, as it is now understood, would be effected, not by an act of the legislature, but by a change of words in the dictionary.

6. The plaintiff has proved no fact which can raise the slightest presumption that she was not duly authorised, as she represented herself to be.

*Porter, J.* delivered the opinion of the court.

The plaintiff Celeste Dranguet, assisted by her husband, B. Dranguet, sues the defendant, to be relieved from a contract which she entered into with him; and to have the property, or its value restored to her, which she has lost in consequence of the defendant having taken out an order of seizure and sale, and having sold effects belonging to her in part satisfaction of the debt, evidenced by that contract. There was judgment in her favor in the court of the first instance, and the defendant appealed.

The facts of the case are few, and free from controversy. The counsel for the appellant has correctly stated, that it offers only one question of law ; and the objection made by him on which that question arises, has been argued with an ability highly satisfactory to the court.

The petition, after the usual allegations, and a special statement of the contract the plaintiff had made with the

defendant, declares expressly, "that the said Celeste Dran-
guet was never legally authorised or empowered by her said
husband Benjamin Dranguet or by any competent authority
to contract for the purchase of said land, or to affect in any
manner her dotal property."

The answer after a general denial, avers that in the absence
of her husband, Benjamin Dranguet, Celeste Dranguet was
legally authorised by the judge to contract."

The question already alluded to, which the case presents, Where the wife
sues to rescind a
contract made
by her on the
ground that she
was not duly and
legally authori-
sed to make it,
she is not bound
to prove she was
not authorised.
It is a nega-
tive proposition
which throws
the burthen of
proof on the de-
fendant.
grows out of the pleadings. The plaintiff insists that she is
not required to prove, she was not authorised. That the pro-
position is a negative one, which throws the burthen of
proof on the defendant. He, on the contrary, denies the
truth of the proposition in any case, and particularly combats
its correctness, when applied to that now before the court.
To strengthen the position taken by him, he has referred to
the contract made by authentic act, in which the wife stated,
"that her husband was absent from the state, and that she
was duly authorised by the parish judge to contract." Counsel
has referred us to 1 *Starkie*, 376. *Febrero, part* 2, *liber* 3,
*chapter* 1, § 7, *numbers* 278—80, *and* 8 *Touillier, page* 19.

The first writer does not support the doctrine contended
for. The second enounces principles very analagous to the
rules of evidence which the law of England recognises on
this point. But the latter goes the whole length of the pro-
position for which the advocate of the appellant contends. It
is supported by that writer with his usual ability and learning,
and we, who so often derive assistance from his opinions and
researches, regret to find ourselves unable to concur with him
on this question. It is impossible, we think, on examining
what he has written on it, not to feel that the question is
rather argued on one side, than examined on both, and then
decided. This diminishes, in some manner, the weight due
to it as authority. The doctrine for which he contends,
though no doubt supported by some who have preceded him,
is not that which has been generally received and acted on
by courts of justice ; and when novelty reaches us through
any source, it must trust to its adoption, to the force of the

WESTERN DIST.
October, 1831.

DRANGUET
ET ALS.
vs.
PRUDHOMME.

reasoning by which it is supported. Besides the abstract reasoning, its consequences too, must be looked into. Our law defines a contract, to be "an agreement to give, to do, or not to do a particular thing." The doctrine contended for, unless we greatly mistake, would make many of those obligations which arise out of a party not doing a thing, utterly null, and of no effect. For between denying a right and refusing all remedy, there is little or no difference. That there are negative propositions capable of being proved, is clear of all doubt; such as the familiar case of proving a man was not at a particular place on such a day, by showing on that day he was at another so great a distance apart, that he could not be in both. And so in other analogous cases, where the negative can be established by proving an affirmative inconsistent with it. There are, however, other negative propositions which it is absolutely impossible to prove. That a thing exists, or has existed, or that it has been done, is susceptible of proof, though in particular cases from accidental causes, that proof cannot be administered. But the non-existence or the non-performance in many cases defy all human power to establish by evidence. We can only prove that of which we obtain knowledge through our senses, and they can only act on things which exist.

The error of the argument on the part of the appellant arises, we think, out of giving too much importance to the rule, that he who affirms should prove. That rule is certainly a valuable one; but it is valuable because in by far the greater number of instances, the affirmative contains an assertion that such a thing has existed, or that such an event has taken place. But there is nothing in the general rule more than in any other, which should render legislators and courts of justice so particularly enamoured with it as not to admit exceptions to it. It was framed like all other rules of evidence with reference to the transactions of men, and the nature of things, to assist in the investigation of truth; and whenever it is pushed to an extreme, which makes it defeat the object it has in view, the exception instantly arises out of the principle on which the rule was

*There are negative propositions which can be proved; such as proving a man was not at a particular place on a certain day, by showing he was at another, so great a distance as to render it impossible to be at both; or where the negative can be established by proving an affirmative inconsistent with it.*

*It is a general rule that he who affirms must prove; but there are many negative propositions which it is impossible to prove, such as the nonexistence or the non-performance of things, which in many instances defy all proof.*

established. If we were to admit that a negative might be proved in all cases, and no one goes that length, still it must be admitted on the other hand, that this proof would frequently be so feeble and uncertain as scarcely to afford any assistance in reaching the truth of the fact in controversy. It is better then for the law to reject such evidence, and establish as a rule that the negative will be presumed unless the contrary is proved. This imposes no hardship on the party holding the affirmative, and does not violate the rule that a man is not compelled to give evidence against himself, nor the other, that he is not obliged to assist his adversary to make out his case. It merely tells him that if he enter into a contract, where his obligation arises out of the party with whom he contracts, not doing a particular act, or of a thing not having taken place; or that it would not take place, the law will consider the negative established, unless he prove the affirmative inconsistent with it. In the greater number of instances we venture to say, this rule works far better in assisting courts of justice in their search after the truth, than the other would which is offered as a substitute for it.

But there are cases where the negative cannot be proved at all, where not even presumptions can be obtained: and where the interrogatories, on which Touillier places so much importance, would be in vain administered to the adversary. What then? Are the legal rights which the law confers, to be sacrificed to the aphorism, that he who affirms must prove? It is not more worthy of an enlightened legislation to suppose that the law did not intend so vain a thing as to recognise contracts as legal and binding which in the nature of things, could not, on the doctrine contended for, ever be proved. Several cases have suggested themselves to us in illustration of this principle, but as that now before the court is as striking a one as can be selected, it may be better taken than any other.

The law it is admitted, prohibits the wife from contracting, unless authorised by her husband or by the judge; and if she does contract without their permission or approbation she has a right to have the contract set aside. A case occurs

11

WESTERN DIST.
October, 1831.

DRANGUET
ET ALS.
vs.
PRUDHOMME.

So when the wife, who is forbidden to contract, makes a contract without being authorised and sues to set it aside because she was not authorised, it is impossible for her to prove she was not. It devolves on the opposite side to show that she was.

WESTERN DIST.
October, 1831.

DRANGUET
ET ALS.
vs.
PRUDHOMME.

where she contracts and is not authorised. If, as the argument supposes, she must prove the negative, the consequence is that the prohibition positively made by the law, and the right as positively conferred on her, are null and. void, and of no effect. How, we ask, is the wife to prove she was never authorised by her husband, supposing in point of fact she was not? The opposite party if examined on facts and articles could know nothing about it. No human testimony could prove the husband never gave such authority. What affirmative could be established by her inconsistent with the nonexistence of the fact, as would satisfy a court of justice, she was not authorised? We have taxed our imagination to think of one, and we cannot suppose any, unless the rare and accidental cases of incompetency of mind, or want of physical power ; and if we were to admit these exceptions as sufficient to establish a general rule, our conclusion would be, that a law intending to prohibit all married women, succoured only those, whose husbands were insane, or otherwise incapable of giving assent to a contract. Instead of banishing this doctrine, then, as Touillier recommends from our jurisprudence, as vain and founded in subtilty, we think it should be preserved as well calculated to assist in the investigation of truth, and further the ends of justice.

The appellee has required us to amend the judgment in his favor, but on looking into the evidence, we think the judge below decided correctly. She has also asked for damages by reason of the appeal being frivolous. We do not think this a case in which they should be accorded.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.

After the foregoing opinion was delivered,

*Rost*, counsel for the defendant, presented a petition asking for a re-hearing of this cause.

The judges took the case under advisement, and during the term overruled the application for a re-hearing, and pro-

nounced the following opinion in affirmance of the former judgment.