## S. Moussier *v.* J. E. Zunts et al.

The acknowledgement by a married woman in an act of mortgage of her indebtedness, does not estop her from denying that the debt which her mortgage was given to secure had enured to her separate benefit.

The creditor is bound to show affirmatively that mortgage notes signed by a married woman were given for a debt which had enured to her benefit, in order to render her liable.

The burden of proof in such case rests on the creditor, although the wife is separated of property from her husband.

A married woman, when properly authorized, may become security for any other person than her husband.

APPEAL from the District Court of the Parish of Plaquemines, *Rousseau*, J. M. M. *Cohen* and J. *Foulhouze*, for plaintiff and appellant. *H. D. Ogden* and *P. E. Bonford*, for defendants.

Merrick, C. J. Although the re-hearing was granted generally in this case the reëxamination of it has been confined chiefly to two or three branches of the controversy.

We have considered the opinion of Mr. Justice Buchanan as conclusive upon the question, whether the mortgage was absolutely void, as having been extorted by fear and threats, and also on the question of damages for the alleged wrongful acts of the Sheriff in executing the writ, and on the right of the plaintiff in the

MOUSSIER
v.
ZUNTZ.

executory process to seize the property attached to the plantation, and thus made part thereof for the working of the same.

The questions which have occasioned us the most trouble in the decision of the cause are the following : On whom is the burden of proof ?  Ought the plaintiff to be charged with the sum of $10,000 paid *Mrs. White ?*  Could she bind herself *in solido* for all the debts of the Bellevue plantation, her sister's debt as well as her own, and was that her intention ?

From the synopsis of the plaintiff's petition made by Mr. Justice Buchanan in his opinion, it appears that one of the grounds of injunction is, that there is a failure of consideration in this, that the mortgage notes were given for the balance of an account, but that the same did not enure to the benefit of the plaintiff, she being a married woman.

The defendant, in making up the issue upon this branch of the case, avers "that the said act of mortgage and the notes sued on were given voluntarily for valuable consideration for moneys advanced and paid by the said *Maunsel White for the payment and liquidation of debts due by the said petitioner in injunction and her sister, Miss Marie Emma Cornen,* and for supplies for the plantation belonging to said *Mrs. Moussier,* plaintiff in injunction, and said *Miss Cornen,*" and after setting out plaintiff's title, the defendant further alleges " that, in the aforesaid divers acts of transfer and sale, mortgage notes had been given for the same, and said *Mrs. Moussier* and *Miss Emma Cornen* were bound to pay, and did assume the payment thereof ; that the consideration for which the mortgage and mortgage notes sued on were given, was the advances made by said *Maunsel White* and *Maunsel White & Co.,* for the payments for the aforesaid mortgaged notes given for the said property, and assumed as aforesaid, and for the sum and price of $10,000, paid said *Mrs. Maunsel White,* and the amount advanced and paid to the Union Bank, and for supplies and expenses to the said plantation, all of which facts will more fully appear by accounts-current and copies of the notarial acts hereunto annexed, and made part of this petition, and referred to for a full and complete detail, and for greater certainty."

This being the issue on this branch of the case, the question then arises on whom is the burden of proof?  The plaintiff, to show failure of consideration, or the defendant, to show that the consideration which has set forth enured to the benefit of the plaintiff, a married woman.  The question is by no means a new one.

The case of *Eliza J. Erwin* v. *James McCalop et al,* 5 An. 173, is somewhat similar.  In that case, " the plaintiff enjoined an order of seizure and sale sued out by the defendant, *McCalop,* upon a mortgage given by her to secure the payment of her promissory note in his favor, on the ground that the debt was originally her husband's, and that she is not responsible for it.

" The answer" was, " that the debt enured to the benefit of the plaintiff, and that, if it was a debt of her husband, it was contracted under circumstances which render her liable for it."

The court says " it is not necessary to notice the bill of exceptions taken by defendant's counsel, for if all the facts which he offered to prove were admitted, they would not show that this particular debt enured to the benefit of the plaintiff.  *This fact must be shown affirmatively* by the defendant, in order to make the debt binding upon her ; her being separated of property does not throw the burden of proof on her, nor is she estopped from setting up this defence by her acknowledgment of indebtedness in the act of mortgage.  *Dranguet* v. *Proudhomme,* 3 L. R. 74 ; *Pascal* v. *Sauvinet,* 1 An. 428, and cases there cited."

The subject was again considered in the case of *Patterson* v. *Fraser* and the doctrine in the case of *Brandigee* v. *Kerr*, 7 N. S. 64, that it is of the essence of the obligation that the wife should have a separate advantage in the contract, was reviewed and affirmed. It is there said, that " to permit the naked acknowledgment of the wife to bind her without other proof, is inconsistent with the spirit and policy of our laws and jurisprudence. The influence of the husband will readily obtain from the wife such declaration."

These cases were again reviewed in the case of *Beaurgard* v. *Her Husband*, 7 An. 294.

The court again says, it is a principle which has come down to us from the laws of Spain, that he who contracts with a married woman must show affirmatively that the contract turned to her advantage." The exception was when the wife renounced the 61st law of Toro, but this exception no longer exists. The Act of 1855, p. 254, authorizes the wife to bind herself as a *femme sole* for her separate debts, but this Act has no application to the present case. Revised Statutes, p. 560, sec. 1, 2 and 3.

The case at bar, however, differs from the cases cited in this, that the wife alone signs the promissory note authorized by the husband. But this can make no difference, as has been' repeatedly remarked by this court, for the husband would only have to change the form of the contract and authorize the wife to sign, to evade the provisions of Article 2412 Civil Code altogether. 7 N. S. 66.

The burden of proof was, therefore, upon the defendant, and he has alleged that $10,000, the amount of the purchase of the plantation from *Mrs. White*, was advanced by him. He must prove it ; and how does he make this proof? He says that the deed from *Mrs. White* to *Mrs. Moussier* establishes the fact when taken in connection with the mortgage.

But before we can consider these two instruments the deposition of *Miss Emma Cornen* must be disposed of, for she is a witness introduced by the defendant himself, and she has sworn that *Mrs. White* was actually paid the $10,000 specified in the act of sale in money from her savings, and some money which her sister, the plaintiff, had. To this it is replied that the witness is mistaken, as it is evident from her letters that she and her sister were both without means in money at that time. But these letters were objected to, and a bill of exception taken to their introduction. They were inadmissible to impeach the testimony of the witness, for she was defendant's witness. They were inadmissible to charge plaintiff with any indebtedness, for they were merely the acknowledgments of a third person in a correspondence. 1 Greenleaf, secs. 442, 443. The only purpose for which they were admissible, was to show the indebtedness of *Miss Emma Cornen* herself, for whom, it is asserted in argument, *Mrs. Moussier* became security,

They can have no effect upon the indebtedness of *Mrs. Moussier*, but when offered for the purpose for which they were admissible, they create a doubt whether the witness may not be mistaken as to the payment by *Mrs. Moussier*, and we prefer considering the question without reference to this testimony.

Then, when we place the act of sale from *Mrs. White* to *Mrs. Moussier* and *Miss Cornen*, by the side of the act of mortgage from the latter to *Mrs. White*, we find in one instrument the receipt of $10,000 acknowledged as paid at the execution of the act, and, as a consequence, in the presence of the notary, to *Mrs. White*, and in the other an acknowledgment of indebtedness of $43,362 53 to

3

*Maunsel White.* How can this court presume from these two acts that the $10,000 acknowledged to have been paid *in lawful current money* was not paid, but formed a part of the $43,362 53. There is nothing from which it can be inferred. The burden of proof is upon the defendant, and the comparison of these instruments does not furnish the proof which he was bound to administer. But it is said the proof results from a ratification of the account which contained this as one of the items as testified to by *Kohn.* The testimony of *Kohn* is rebutted by that of *Reese,* and we have not discovered any proof in the record which shows that *Mrs. Moussier* ratified the account containing this item; if, indeed, she could be concluded by such ratification.

We think, therefore, the defendant has failed in his proof to the extent of one-half of the debt for one-third of the plantation bought of *Mrs. White,* viz : $5000.

By the same reasoning it is shown he has failed in his proof for one-half of the debts due by *Mrs. White,* and the plaintiff is not bound for *Moussier's* drafts and the other items of the account not proven. The one-half of the latter amounts to $2362 56, and the whole being deducted from $24,863 14 leaves $20,136 01; the one-third of which would be *Mrs. White's* share, and one-half of one-third, $3356 33, improperly charged to *Mrs. Moussier,* without proof, as part of the price of *Mrs. White's* interest.

The following items, therefore, are unsustained by proof, viz : one-half of the price of *Mrs. White's* interest................................. $5,000 00
One-half of *Moussier's* drafts and other items not proved............ 2,362 56
One-half of balance of *Mrs. White's* indebtedness................ 3,356 33

$10,718 89

The next question to be considered is, whether *Mrs. Moussier* could bind herself *in solido* with her sister as her surety?

At the execution of the act of mortgage, *Mrs. Moussier* (with the exception of 7–240 parts, as shown by Mr. Justice Buchanan), was the owner of five-sixths of the plantation, and *Miss Emma Cornen* one-sixth. But in buying the one-third from *Miss Cornen* on the 3d of March, 1849, *Mrs. Moussier* assumed one-third of the mortgages remaining upon the plantation unpaid.

*Miss Cornen* at the time she executed the notes and mortgage was *sui juris.* She could bind herself as a *femme sole* for her own debts, and as surety for her sister. But as surety for the latter she would not be bound for anything more than the amount for which her principal was bound. C. C. 3006. The obligations of *Miss Cornen* subscribed by her, stand upon a different ground from those of *Mrs. Moussier.* The burden of proof is upon her to show the failure or want of consideration. And as against her the mortgage and notes corroborated by the letters must stand, unless they are shown to be erroneous.

The mere failure of proof on the part of the *defendant* will not release her from her portion of the promissory notes.

On a review of the authorities, we find that it has been decided that a married woman may become a security for a third person. See *Ferrell* v. *Yoe,* 2 An. 903; *Roberts* v. *Wilkinson,* 5 An. 369. It is with some hesitation, however, that we admit the doctrine in the present case, where the wife binds herself *in solido* with a third person, and the contract is not one of suretyship purely, although by her act of purchase from that person she had bound herself for certain mortgages upon the property. But giving the benefit of this construction of the law to the

defendant, it will leave the one undivided half of said notes subject to the payments, in full force and vigor ; for, the surety cannot question an obligation which her principal has not the means of showing to be erroneous.

As it respects the claim for dividends upon bank stock, the plaintiff fails in her proof, and has not the proper parties before us.for relief.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment heretofore pronounced by this court be set aside, and that, as heretofore decreed, the judgment of the lower court be avoided and reversed, and now proceeding to pronounce such decree as ought to have been pronounced, it is ordered, adjudged and decreed by the court, that the said mortgage notes upon which said order of seizure and sale issued be credited, upon the principal thereof, one-fourth upon each note, as of the day of their date, with the sum of $10,718 89 in favor of the plaintiff, as improperly charged to her in the consideration of said notes, and that said mortgage note which fell due in April, 1851, be further credited with the payment of $5057 08, as of the 4th day of April, 1851, and that the further sum of $3600 be credited as of February 15th, 1853, *pro rata*, upon the mortgage notes then due, and that the injunction issued in this case be perpetuated for the said three several sums herein allowed as credits, and that the same be dissolved as to the residue of said writ of seizure and sale, the plaintiff herein paying the costs of appeal, and the defendant the costs of the lower court, it being understood that this decree does not prejudice any claim the.plaintiff may have against the proper parties on account of said Union Bank stock. ·

LAND, J. I concur in the decree prepared by C. J. Merrick.

BUCHANAN, J., dissenting. The question of suretyship does not seem to me properly to arise in this case. The only case mentioned in the Code in which one creditor *in solido* is considered as the surety of the other creditor, is that put in Article 2102, which is not applicable to the contract now under consideration.

Again, a distinction is made in the opinion prepared by the Chief Justice, between *Mrs. Moussier* and *Miss Cornen*, as to the burden of proof. But it is not necessary to make any such distinction. This is a suit to which *Mrs. Moussier* alone is a party plaintiff, and in which she enjoins an order of seizure and sale, on the ground, among others, that the balance of accounts, for which the notes held by plaintiff were given, was erroneous. The principal error alleged was an item in the account to the debit of the Bellevue plantation, of ten thousand dollars, for so much paid by *Maunsel White*, or *M. White & Co.*, to *Mrs. White*, for her third of the plantation sold *Mrs. Moussier* and *Emma Cornen*. With regard to this item, which is the only one upon which any difference of opinion really exists, the original opinion of the court treated the burden of proof as being upon the plaintiff in injunction, *Mrs. Moussier*, and not upon the defendant in injunction, *Mr. Zuntz*. And *Mrs. Moussier* was found to have proved the error by evidence of no less authority than the declaration of *Maunsel White* and of his wife, the vendor, in the authentic act of sale of *Mrs. White's* third of the plantation referred to in this item of the account. The defendant in injunction endeavored to rebut this affirmative proof of error, but unsuccessfully. The reasoning and conclusions of the original judgment upon this head seem to be entirely concurred in by the opinion prepared by the Chief Justice, on the rehearing ; and it does, therefore, appear to me incorrect to say, as is said in the opinion, that there is simply a failure of proof on the part of defendant, of the correctness of the account. On the contrary, every cent of deduction that was

made by the original judgment of this court, was so made upon affirmative proof administered by the plaintiff in injunction.

I think our former judgment ought to remain undisturbed.

---

OPINIONS ON RENDERING THE ORIGINAL JUDGMENT.

Buchanan, J. The plaintiff, a married woman, enjoins the execution of a mortgage by authentic act, granted by her upon her separate estate. Her grounds of action are various, and are substantially :

1st. That the mortgage was extorted by fear and by threats.

2d. That the mortgage was given for a balance of account-current, in which there are many errors to her prejudice.

3d. That many of the items to her debit in said account did not enure to her benefit, but were advances made to her husband.

4th. That the sum of three thousand six hundred dollars has been paid by her, on account, which is not credited upon the writ of seizure and sale.

5th. That the advertisement of sale includes three horses, fifteen mules, six working oxen, one cow, eight sheep and lambs, ten carts, and a lot of farming utensils, which were not mentioned in the writ of seizure and sale.

6th. That plaintiff has suffered twenty thousand dollars damages, by acts of waste and trespass on the part of the Sheriff's keeper, who was in charge of the property from the 30th January to the 28th February, 1855, such as " forcing plaintiff's servants out of her employ, ruining her fields by mismanagement, preventing plaintiff from cultivating the same, and from planting therein the canes which she had prepared and matrassed for the purpose, starving her cattle, destroying her poultry yard, cutting down fruit trees," &c.

I. The petition does not explain in any manner what was the nature or degree of the fear of plaintiff, or by whom inspired. The only evidence on the subject, is that of two witnesses, who testify that the plaintiff's husband expressed great anxiety that she should sign this mortgage, which she was unwilling to do ; and even threatened to go to California, unless she signed the same. This is not such a threat as can have the effect of invalidating the contract, under Article 1845 of the Civil Code. It is also to be observed, that the mortgagee had no share in these threats, such as they were, nor any knowledge of them. There was also another apparent cause for the mortgage than the threats of plaintiff's husband. C. C. 1852, 1853.

II. In examining this ground, we must commence by a chronological retrospect of the origin and changes of ownership of the property mortgaged, and of the relations of the mortgagee thereto, as illustrating the correctness of the manner in which the accounts have been kept, upon which the present mortgage is based ; and of the balance of account which is represented by the notes, which this mortgage has been given to secure.

*Marie Genevieve Garel*, wife separated in property of *Jean Marie Cornen*, of the parish of Plaquemines, died possessed, in her own right, of a tract of land of fifteen arpents front on the left bank of the river Mississippi, by forty arpents in depth, cultivated as a sugar plantation, under the name of the Bellevue plantation, with thirty slaves. Her heirs were nine in number, her husband and eight children of full age, each inheriting one-ninth of her succession. On the 15th of

April, 1843, three of the children and heirs of *Mrs. Cornen*, sold to their father and the five other co-heirs, their interest in the Bellevue plantation and improvements, cattle, implements of husbandry and other appurtenances, also in thirty slaves thereunto attached. The six purchasers, *Jean Marie Cornen, Pierre Paul Cornen, Emma Cornen, Coralie Cornen, Mrs. Coolidge,* and *Mrs. Moussier,* the present plaintiff, being thus each vested with the ownership of the entire plantation and slaves for one undivided sixth, formed a copartnership in the business of sugar planting, on the 21st of April, 1843, to continue three years, under the firm of *J. M. Cornen & Co.;* one of the articles of which copartnership was, that *Pierre Paul Cornen* should be the manager for the purpose of making the crops, and *Jean Marie Cornen,* or in case of his sickness or inability, *Pierre Paul Cornen,* should be the financial manager and agent of the concern.

1846, *February* 12—*Coralie Cornen* and *Mrs. Coolidge,* two of the partners in the firm of *J. M. Cornen & Co.,* and collectively owners of one-third of the plantation and slaves, sold out their interest in the land and 27 slaves, (four of those mentioned in the sale of the 15th April, 1843, not being in this, and one being in this, who was not in the former sale,) and, also, two-eighths of the interest of *Jean Marie Cornen,* their father, therein, which had fallen to them by inheritance, the said *Jean Marie Cornen* having died, to the other three surviving partners, namely, *Pierre Paul Cornen, Emma Cornen* and *Mrs. Moussier.*

1846, *March* 24—*François Theodore Cornen,* one of the children of *Jean Marie Cornen* and his wife, and one of the vendors in the sale of the 15th of April, 1843, above mentioned, made an act recognitive and confirmatory of a sale of the 6th of June, 1844, by said *F. T. Cornen* to his brother *Paul,* and his four sisters *Emma, Coralie, Mrs. Coolidge* and *Mrs. Moussier,* of all his share (one eighth) in his deceased father's interest in the property of the firm of *J. M. Cornen & Co.*

1846, *March* 28—*Mrs. Achille Sigur,* another of the children of *Jean Marie Cornen* and his wife, and one of the vendors in the act of 15th of April, 1843, above mentioned, sold her interest (one-eighth) in the share of her deceased father in the said property, to her brother *Paul* and two sisters, *Emma* and *Mrs. Moussier.*

By the effect of the above recited conveyancy, the Bellevue plantation, with its appurtenances and the slaves attached thereto, belonged, after the 28th March, 1846, to the following persons :

1st. *Mrs. Edward Sigur,* in the proportion of $\frac{1}{8}$ to $\frac{1}{6}$, equal to 1–48, as heir of her father, *Jean Marie Cornen.*

2d and 3d. *Mrs. Coolidge* and *Coralie Cornen,* each in the proportion of 1-5 of $\frac{1}{8}$ of $\frac{1}{6}$, equal to 1–240, as vendee of a portion of their brother *Theodore's* share in the succession of their father.

4th, 5th and 6th. *Paul Cornen, Emma Cornen* and *Mrs. Moussier,* jointly, for all the remainder, being 233–240, or in the proportion of 233–720 to each.

1847, *December* 15—*Pierre Paul Cornen,* styling himself owner of one undivided third, although, as we have seen, this was not altogether correct, sold the undivided third of the plantation and appurtenances, also one-third of 29 negroes (four of those named in the sale of the 12th of February, 1846, not being in this sale, and six of those named in this sale not being in the former) ; also, one-third of 206 shares of Union Bank stock, (not mentioned in any of the previous sales,) to *Mrs. Heloïse White,* wife of *Maunsel White,* and authorized and assisted by her husband.

1849, *March* 3—*Emma Cornen,* making the same mistake that her brother had made, sells to *Mrs. Moussier* the undivided third of the plantation and of twenty-

eight slaves—one old negro named *Alexander*, included in the last sale (15th of December, 1847,) not being found in this sale.

1850, *April* 22—*Mrs. White* sells to *Emma Cornen* and to *Mrs. Moussier*, jointly, one undivided third of the plantation and appurtenances, and of twenty-eight slaves; a young man slave named *Paul Turner*, named in both the sales of the 15th December, 1847, and the 3d of March, 1849, being omitted in this sale; while the old man *Alexander*, omitted in the sale of 3d March, 1849, figures again in the present sale. There is no mention, in this sale from *Mrs. White*, of the 206 shares of Union Bank stock of which she had acquired one-third as attached to the plantation when she purchased in December, 1847; neither do those shares of stock figure in the mortgage of which we shall presently speak, nor in the accounts-current between the parties.

The petition for the seizure and sale is equally silent respecting this bank stock, which apparently has been separated from the plantation; but how, or for whose benefit, the record does not inform us.

We cannot help adverting to this *hiatus* in the record, because it might, if filled up, throw some light upon the acknowledgment of the receipt of ten thousand dollars, made by defendant's author, but which defendant now affects to treat as a fiction.

The present market value of 206 shares of Union Bank stock, is believed to be not far from ($6,000) six thousand dollars.

On the same day with the sale last mentioned, (22d April, 1850,) and before the same notary, *Mrs. Moussier* and *Emma Cornen* acknowledged themselves to be indebted to *Maunsel White* in the sum of $43,064, for which they make their four joint and several promissory notes, to their own order, and by them endorsed in blank, for $10,766 each, with eight per cent. interest from date until paid, and payable, respectively, 1, 2, 3 and 4 years after date, and secured by special mortgage upon the plantation and appurtenances, and upon the twenty-eight slaves mentioned in the sale of the same date.

1852, *April* 30—*Maunsel White* assigns and transfers the four mortgage notes above mentioned to *James E. Zuntz*, the defendant, with subrogation to all rights of mortgage and privilege.

The evidence shows the acknowledgment of indebtedness by the plaintiff and her sister, to be based upon accounts rendered by *Maunsel White*, as factor and commission merchant, showing a balance in favor of said *White*, under date of April 2d, 1850, of a like amount with the notes and mortgage.

The accounts of *White* are four in number. The first : " *J. M. Cornen & Co.* in account with *Maunsel White & Co.*" This account commences on the 15th of February, 1847, and is closed on the 24th December, 1847, by the following entry : " To balance transferred to *Maunsel White* . . . . . . . . . . . . . . . $3,408 94."

The second account is headed as follows : " Bellevue plantation in account-current and interest account to April 1st, 1849, with *Maunsel White*." This account commences : " 1847, December 24. To *Maunsel White & Co.* for the full amount of their claims against said plantation . . . . . . . . . . . . . . . . . . . $3,408 94," and is closed by balance to debit of the Bellevue plantation brought down under date of April 1, 1849, of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $25,356 92

Increased by addition of sundry items, said to be omitted, to . . . . . . $25,604 45

The third account is headed thus : " Bellevue plantation in account-current and interest account to 1st of April, 1850, with *Maunsel White*." This account commences as follows : " 1849, April 1st. To balance from page 4 . . . . . $25,604 45"

and closes by a balance to the credit of *Maunsel White*, struck under date of " April 1, 1850, of ........................................$29,620 77"

The fourth and final account we copy in full, as it resumes, in a few items, the whole of the charges which go to make up the amount of the mortgage notes.

" Bellevue plantation in account-current and interest account, to April 1st, 1850, with *Maunsel White :*

1850.

| | | |
|---|---|---:|
| April 1. | To balance.........................$29,620 | 77 |
| March 24. | Paid Union Bank..................... 5,150 | 00 |
| April 2. | Paid *R. Patterson & Co*................. 6,740 | 40 |
| | Paid for 50 empty barrels, $1 15........ 57 | 50 |
| | Paid *Theodore Cornen*.................. 150 | 00 |
| | Paid *Madame White* her ⅓..............10,000 | 00 |
| | Paid cash insurance.................... 112 | 00 |
| | Paid their draft on me.................. 184 | 86 |

$52,015 53

CR.

By net proceeds of 202 hogsheads of sugar and 100 bar-
rels of molasses............................... $8,653 00

$43,362 53

My bills receivable for four promissory notes, at 1, 2, 3 and
4 years, from April 1, 1850, $10,766..............$43,064 00
By amount of the above charges for balance.............. 298 53

$43,362 53"

During the period embraced by the first account, February to December, 1847, the plantation belonged, as we have seen, with the exception of a small fraction, (7–240,) to *Paul Cornen, Emma Cornen* and *Mrs. Moussier*, in equal propor- tions. During that embraced in the second account, (December, 1847, to March, 1849,) the plantation belonged to *Mrs. Moussier, Emma Cornen* and *Mrs. White*, (with the exception of the said fractional part,) one-third to each. And in the pe- riod embraced in the third account, the plantation belonged two-thirds to *Mrs. Moussier* and one-third to *Mrs. White*, always with the exception of the trifling fraction above mentioned. It will also have been observed, that *Mrs. White*, in buying out *Paul Cornen's* share, took his place as to liabilities for the debts of the first of these partnerships. Supposing, therefore, all the charges and credits of the three first accounts-current to be perfectly correct, the balances shown by the same would be due, as follows :

$3,408 94 balance of the first account.

⅓ or $1,136 31 by *Pierre Paul Cornen*, assumed by *Mrs. White*.
⅓ or $1,136 31 by *Mrs. Moussier*.
⅓ or $1,136 31 by *Emma Cornen*.
$25,604 25 balance of second account.
3,408 94 being deducted therefrom, which is the balance due by
the former partnership, although included in this ac-
count, and which we have already distributed,

Leaves $22,195 31 to be distributed as follows :

MOUSSIER
v.
ZUNTZ.

⅓ due by *Mrs. White*, equal to..................$7,398 43.

⅓ due by *Mrs. Moussier*, equal to..................7,398 43.

⅓ due by *Emma Cornen*, equal to..................7,398 43.

$29,620 77 balance of the third account.

25,604 25 being deducted therefrom, as already distributed among the members of the previous partnership,

Leaves $4,016 52 to be distributed as follows :

⅓ due by *Mrs. Moussier*, equal to................$2,677 68.

⅓ due by *Mrs. White*, equal to..................1,338 84.

Total due by plaintiff to *Maunsel White*, at the close of the third account, 1st of April, 1850..............................................$11,212 42.

### RECAPITULATION.

Due by the several partners in the Bellevue plantation to their factor, *Maunsel White*, upon the several balances of account-current rendered by *Mr. White*, to 1st April, 1850 :

| | | |
|---|---|---|
| 1st. By *Mrs. Moussier* .........................$1,136 31 | | |
| 7,389 43 | | |
| 2,677 68——$11,212 42 | | |
| 2d. By *Mrs. White*..............................1,136 31 | | |
| 7,398 43 | | |
| 1,338 84—— | 9,873 58 | |
| 3d. By *Emma Cornen*...........................1,136 31 | | |
| 7,389 46—— | 8,534 77 | |

Total...............$29,620 77

It does not admit of discussion, that a partnership in a plantation and slaves employed in agriculture, is an ordinary partnership, in which the liabilities of the several partners are not solidary but joint, each being bound for the debts in the proportion of his interest in the concern. And yet we will find the settlement of the affairs of the Bellevue plantation, to be made on the footing of a solidary obligation, on the part of two out of three parties interested, for the whole amount of three accounts running through three distinct partnerships ; in one of which partnerships, one of those two parties (*Emma Cornen*) had no interest whatever ; while the third party, *Mrs. White*, who was liable, by contract, for one-third of the debts of the first of the three partnerships, and as partner, for one-third of the debts in the second and third partnership, is left entirely out of view, and treated as if she were under no liability whatever. The evidence of that settlement is contained in the fourth account, which we have copied above, and in the four notes of *Emma Cornen* and the plaintiff, secured by mortgage, for the balance of the fourth account. We are next to inquire how this final balance, thus liquidated by mortgage notes, has been arrived at.

Commencing on the debit side with a statement of a balance due by Bellevue plantation, under date of April 1st, 1850, of $29,620 77, *Mr. White* proceeds, in the fourth account, to charge the plantation with the amount of two debts which he had paid ; one to the Union Bank of Louisiana, and the other to *Robert Patterson & Co.*, of Philadelphia, which were mortgages resting upon the property when *Mrs. White* bought out the interest of *Pierre Paul Cornen*, in December, 1847, and one-third of which she had assumed to pay in her contract of purchase·

These debts amount to $11,890 40, of which two-thirds, or $7926 94 are charge-able to *Mrs. Moussier*, and one-third, or $3,963,46, to *Mrs. White*.

The next charge in this account which demands attention, is the item of $10,000 paid *Mrs. White* for her third of the plantation sold *Mrs. Moussier* and *Emma Cornen*. The District Judge has rejected this charge, because the same is not proven, but on the contrary, the authentic act of sale by *Mrs. White* shows that the purchasers paid the price in cash in the presence of the notary. The following are the expressions of that instrument, which was signed by *Mr. White* as well as by his wife : " This sale is made for and in consideration of the price and sum of ten thousand dollars, which by the said purchasers has been in hand well and truly paid in lawful current money, at the execution of these presents, the receipt whereof is hereby acknowledged, and acquittance in full therefor granted by the vendor."

Supposing that it was competent to defendant, as assignee of *Maunsel White*, to show that the money, thus acknowledged in the act of sale to have been paid *by the purchasers in lawful current money, at the execution of these presents*, was in reality paid by *Maunsel White* himself to his wife, and not by the purchasers (which is a point not necessary to determine), yet, some affirmative proof of such payment should at least have been administered, to overcome the solemnity of the acknowledgment to the contrary, signed by *Maunsel White* as well as by his wife. But defendant has offered no proof, oral or written, in support of the charge. The only witness who was questioned in relation to it (*Miss Emma Cornen*, one of the purchasers from *Mrs. White*,) declared, on the trial, in answer to defendant's queries, that she and her sister had paid the total of the price of *Mrs. White's* third interest in the plantation, cash, with their own proper funds, and that no conversation took place between the parties at the time of the sale, in relation to *Mr. White's* paying this price for the purchasers, and including it in the mortgage. The defendant has introduced a number of letters of this witness, expressive of limited means and pecuniary embarrassments, to discredit this portion of her testimony. To the introduction of these letters in evidence, the plaintiff has excepted. But granting that they were properly admitted, and giving them all the effect which the defendant proposes, it is not seen that his case is much benefited. We are only rid of the testimony of one witness, elicited by himself, adverse to the charge in question. But the notarial act still remains, unrefuted, unimpeached, unexplained. It would be contrary to all principle and to all precedent, to allow a party to destroy his own act, by a mere side wind of suspicion.

Proceeding to the credit side of the account under consideration, we think *Mrs. Moussier* should only be credited with two-thirds, instead of the whole of the nett proceeds of 202 hogsheads of sugar and 100 barrels molasses, say $5,768 67, the other third to be credited to *Mrs. White*.

The District Judge was correct in holding the defendant to be bound by the equities which existed between the original parties to the notes and mortgage, two of the notes being past due when defendant acquired them; and the assignment and subrogation conferring no greater rights than the original mortgagee had.

Having thus corrected what we conceive to be errors in the accounts upon which the plaintiff's notes were based, we have not been able to concur with the District Judge in relation to the rejection of items as having not inured to the use of the plaintiff. The production of proof for every small sum paid for a planter by his factor, is not easy, after many years have elapsed, and we think, that to require proof of the signature of the payee of every order of the planter

4

on his factor, is requiring too much. The authority of plaintiff's husband to draw orders, must be inferred from the evidence. Such appears to have been the uniform course of business of the Bellevue plantation, after *Mr. Paul Cornen* ceased to have an interest, and even before.

The next ground of injunction is, that $3600 have been paid on account of the mortgage debt, which are not credited in the writ of seizure and sale issued. This appears to be well founded, and the injunction must be perpetuated for so much.

As to the horses, mules, working oxen, cows, sheep and lambs, carts and farming utensils, which are advertised for sale, although not mentioned in the mortgage, we are of opinion that the mortgage covers them, although not expressed. The property mortgaged is a tract of land under culture as a sugar plantation. The animals and movables above enumerated, are evidently attached to this land for its service and improvement. They are, therefore, immovable by destination, and constitute a part of the plantation. C. C. 459.

The petition next alleges that petitioner has suffered twenty thousand dollars damages by plaintiff taking illegal possession of the plantation of petitioner from the 30th January to the 28th February, 1855, under the writ of seizure, and committing various acts of trespass and waste thereon, such as forcing petitioner's servants out of her use and employ, ruining her field by mismanagement, preventing her from cultivating the same and planting therein the canes which she had prepared and matrassed for the purpose, starving her cattle, destroying her poultry-yard, cutting down fruit trees, &c.

Upon this claim for damages, some evidence has been given of waste committed by the Sheriff's keeper, who was put in possession of the property seized by that officer ; but no privity of the defendant is proved, and the plaintiff must look to the Sheriff for reparation of the tortious acts of his subaltern in the execution of the writ addressed to him. Sheriffs give bonds for the faithful and proper discharge of their duties ; and litigants pursuing legal remedies, are not responsible for the Sheriff's abuse of those powers which the law confers upon him as the executive officer of the courts of law. *Mayes* v. *Schmidt & Co.*, 11 An. 476.

There is a further claim of twelve hundred dollars for travelling expenses and counsel fees in defending the executory process, which requires no further notice, as plaintiff has introduced no evidence in support of it.

We state the indebtedness of the plaintiff to the original mortgagee, at the time the notes and mortgage were executed, (22d April, 1850,) as follows :

| | |
|---|---:|
| Balance of account April 1st, 1850,.......................... | $11,212 42 |
| Add two-thirds of the Union Bank and *Patterson* debts paid by *Maunsel White*........................................ | 7,926 94 |
| Also ⅔ of items $57 50, $150, $112, $184 86,—total $504 36, in account under date of 2d April, 1850,..................... | 336 24 |
| | $19,475 60 |

Cr.

| | |
|---|---:|
| By ⅔ net proceeds sugar and molasses....................... | $5,768 67 |
| Balance in favor of mortgagee, bearing interest from April 22d, 1850, at 8 per cent................................... | $13,706 93 |
| To be credited with the sum, paid on the 4th of April, 1851, of... | $5,057 08 |
| And with the further sum, paid on the 15th February, 1853, of... | $3,600 00 |

It is, therefore, adjudged and decreed, that the judgment of the District Court be amended; that the writ of seizure and sale be reduced in conformity to the statement above written, and that the injunction be perpetuated for the surplus, without prejudice to defendant's recourse against *Emma Cornen* upon his mortgage; that the injunction herein issued be perpetuated for the amount by which the executory process is hereby reduced as above; and that, for the remainder of the writ, after the reductions and credits aforesaid, the injunction be dissolved; and that the defendants pay the costs of the court below; those of appeal to be borne by plaintiff and appellee.

MOUSSIER<br>v.<br>ZUNTZ.

SPOFFORD, J., dissenting. We all agree that the duress which forms the burden of the complaint in this case was insufficient to afford any ground for relief to the plaintiff.

There is no presumption of improper marital influence; because the notes were not signed with, nor for her husband, from whom the plaintiff alleges herself to be separated of property.

It is not now pretended that the husband received anything for the notes, or had any interest to induce his wife to sign them if she did not owe them.

The only ground left is that of error, which is most vaguely alluded to in the petition.

In this court, I understand the theory of the plaintiff's case to be, that *by mistake*, she signed, and *Maunsel White* took her notes for about $20,000 too much, in executing a mortgage for about $43,000 only. To establish this, we are called upon to ignore one notarial act which she signed, and to give a literal and isolated interpretation in her favor to another, which she signed at the same time, and before the same notary and witnesses. I look upon these simultaneous acts as constituting one entire transaction; construing them thus, the plaintiff's indebtedness is established.

And my review of the record has led me to the conclusion, that the evidence is not sufficiently cogent to overturn the notarial act of mortgage, and to sustain the plaintiff's injunction on the ground of error to the extent of about $20,000.