WILLIAM J. HOLDEN & another *vs.* LORENZO PHELPS.

Middlesex. March 23. — April 1, 1886. W. ALLEN & HOLMES, JJ., absent.

The records of a savings bank contained what purported to be a vote of the trustees authorizing the treasurer to " discharge, assign, and release all mortgages belonging to the bank," certified to by the secretary, who was also the treasurer. The trustees had passed a vote authorizing the treasurer to discharge and release mortgages, and the word " assign " had been fraudulently interpolated in the record. The vote, as it appeared on the records, was shown by the treasurer to A.'s agent, who made a copy of it, which he showed to A., who, relying upon it, took an assignment by the treasurer of a mortgage held by the bank, and paid him the full value thereof. Both A. and his agent acted in good faith. No part of the money paid by A. to the treasurer was ever received by the bank. *Held*, on a bill in equity by the receivers of the bank against A., to obtain a reconveyance of the mortgage, that the plaintiffs were estopped to deny the validity of the assignment.

BILL IN EQUITY, by the receivers of the Reading Savings Bank, to obtain the reconveyance of certain mortgages alleged to belong

to the bank, and to be in the possession of the defendant. The case was heard by *Gardner*, J., and reported for the consideration of the full court, in substance as follows:

The Reading Savings Bank was incorporated by the St. of 1869, *c.* 393. Nathan P. Pratt was the secretary and treasurer of the corporation, and general confidence was reposed in him up to the time of the failure of the bank, in 1879. In the early part of 1878, Joseph P. Thompson of Lowell had a conversation with said Pratt in relation to mortgages which Thompson said he understood that the bank was disposing of. The defendant was spoken of as one who wanted to buy some mortgages, and Pratt asked Thompson to bring the defendant to Reading, where the banking-house was. Soon after, Thompson and the defendant went to Reading, and there met Pratt, who told them of mortgages given by one Case and one Gray, saying that it was necessary for the bank to call in some of its mortgages, that payment had been demanded, and that the mortgagors would prefer to have some one take the mortgages and let them lie. Pratt, Thompson, and the defendant then went together to the mortgaged premises of Case and Gray, and examined the property, and the defendant agreed to buy the mortgages if the titles thereto were right. Pratt, in answer to the defendant's question as to the assessed values of the property, answered that the assessors' books and his authority to assign the mortgages were at the bank, and that the defendant could go there and examine them for himself. The defendant and Thompson being unable to go to the bank that day, the defendant told Pratt that he should leave it all to Thompson, and, if he said everything was all right, he would take the mortgages. Within two days thereafter, Thompson went to the bank and there met Pratt, who showed to him the assessors' books, and also the book of records of the bank. Thompson read the vote, which was recorded therein as follows : " Upon motion of C. P. Judd, voted that the treasurer be authorized to discharge, assign, and release all mortgages belonging to the bank. It was then voted to dissolve the meeting." Thompson testified that he made a copy of this vote, in pencil, upon a piece of paper, and afterwards copied the same in his diary. This was produced, and the copy read as follows : " At a meeting of the trustees of the Reading Savings

Bank held May 3, 1876, upon motion of C. P. Judd, Esq., one of said trustees, voted, that the treasurer be authorized to assign, discharge, and release all mortgages belonging to the bank. A true copy of record, Nathan P. Pratt, Sec'ty." Upon returning home, Thompson reported to the defendant that he had been to the bank, and that the records were all right, and showed him what purported to be a copy in pencil of the records of the bank, and also a copy of the assessors' valuation of the property.

The judge found as facts that the defendant read in the paper shown to him by Thompson the clause relating to the power given to the treasurer of the bank to assign mortgages, and, relying upon this and upon the statement made by Thompson that everything was all right, the defendant agreed to buy the mortgages, and afterwards took the assignments thereof and paid Pratt, in full therefor, the sum of $3054 ; and that Thompson and the defendant acted in good faith, and neither had suspicion of any attempt on the part of Pratt to defraud the bank.

Prior to the assignment of the Case and Gray mortgages to the defendant, they were due and unpaid, and were held by the bank as a part of its assets. The trustees, in fact, passed a vote empowering the treasurer " to discharge and release all mortgages belonging to the bank," and it was so recorded upon the book of records. The word " assign," at the time Thompson examined the record, had been interpolated therein without the knowledge of either of the trustees, the record of that meeting being attested by Pratt as secretary. The interpolation was not in the handwriting of Pratt, and was skilfully done. No part of the money received by Pratt from the defendant ever came to the use of the bank, but forged duplicates of the notes and mortgages, and of the insurance policies upon the mortgaged property, had been made and placed among the mortgage securities of the bank, all of which forged notes, mortgages, and policies were so well executed that the trustees were deceived thereby. No special authority was given to the treasurer to assign these notes and mortgages ; and no vote was passed by the trustees authorizing the treasurer to make assignments of mortgages.

The interest due upon these mortgage notes was paid by the mortgagors to the defendant, and sometimes sent to Thompson by Pratt, up to the time of the failure of the bank.

*S. Bancroft,* for the plaintiffs.

*J. G. Abbott,* for the defendant.

C. ALLEN, J.   It appears that Thompson made a personal examination of the records of the bank, and took therefrom what purported to be a copy of the record of the vote, and what in fact was a correct memorandum of the substance of it; and that he told the defendant that he had been to the bank, and that the records were all right, and showed to the defendant his memorandum.   The defendant relied on the assurance thus given, and on his belief that the vote as recorded was sufficient to authorize the treasurer to assign mortgages ; and, in point of fact, the vote as recorded was sufficient for that purpose.   The defendant thus relied on the record as it actually existed, a substantially true representation thereof having been made to him.   The bank is therefore bound by the authority appearing on its records.   The case falls within the principle of the decision in *Commonwealth* v. *Reading Savings Bank,* 137 Mass. 431.   See also *Holden* v. *Hoyt,* 134 Mass. 181.

*Decree for the defendant.*