## HOLDEN and others *v.* WHITING.

*(Circuit Court, D. Massachusetts.* February 18, 1887.)

ESTOPPEL — OF BANK BY RECORD OF VOTE — FRAUDULENT ALTERATION — SALE OF MORTGAGE.

The secretary and treasurer of a savings bank fraudulently altered the record of a vote of the trustees authorizing him to discharge and release all mortgages belonging to the bank, by interpolating the word "assign," and then assigned one of the mortgages for full value to A. *Held,* that the evidence showed that the transaction was a sale, and not a pledge; that the purchase was made on A.'s own account, and not on account of a national bank, as claimed, and that the purchaser acted in good faith and without notice of any fraud; that it was immaterial whether the signature to a certified copy of the record received by the purchaser through the mail (sent, as he supposed, by the secretary in fulfillment of his promise to that effect) was a forgery of the secretary's name or not; and that the purchaser obtained a good title by estoppel against the bank; following certain cases involving similar fraudulent transactions of the same official.

In Equity.

*Benj. F. Butler* and *Solon Bancroft,* for complainants.

*J. G. Abbott,* for defendant.

COLT, J. This is a bill in equity brought by the receivers of the Reading Savings Bank against the defendant, to obtain the reconveyance of a number of mortgages claimed to belong to them as receivers of the bank. On March 22, 1879, the bank failed. It was discovered about this time that N. P. Pratt, the secretary and treasurer of the bank, had fraudulently disposed of a large part of the assets. By a vote of the trustees, passed in 1876, the treasurer was authorized to discharge and release all mortgages belonging to the bank. This record was altered by Pratt so as to read "discharge, assign, and release." By means of this fraudulent interpolation Pratt succeeded in disposing of a large number of mortgages. The rights of purchasers of these securities have several times been before the courts for adjudication. In *Whiting* v. *Wellington,* 10 Fed. Rep. 810, Judge LOWELL held that a purchaser in good faith without notice obtained a title by estoppel against the savings bank by virtue of the certificate of its recording officer that a certain vote was found upon its record. This decision was followed in *Com.* v. *Reading Sav. Bank,* 137 Mass. 431, and in *Holden* v. *Phelps,* 141 Mass. 456, 5 N. E. Rep. 815.

The defendant derived title to the notes and mortgages in controversy through John F. Kimball, president of the Appleton National Bank, and those for whom Kimball acted, and it is admitted that if Kimball, and those for whom he acted, had no title, the defense fails.

The position is taken by the plaintiffs that Kimball had notice that these securities were taken contrary to law, and that he is guilty of fraud. Assuming that notice and fraud on the part of Kimball are charged in the bill, which the defendant denies, I can find no sufficient proof to sustain these allegations. It is in evidence that during the years 1878

and 1879, owing to a feeling of insecurity on the part of depositors towards savings banks, it was customary for the banks to raise money by assignment of their securities or otherwise to meet demands. It is shown that Kimball purchased mortgages from other savings banks in Massachusetts. The fact, therefore, that the Reading Savings Bank wanted to dispose of some securities to raise money was not exceptional in its character. There was nothing in it unusual, or calculated to excite surprise or to put a person upon his guard. Nor, upon the evidence, was there anything unusual, or calculated to arouse the suspicion of a person of Kimball's banking experience, in permitting the treasurer of a savings bank to assign securities. A strong fact going to prove Kimball's good faith is that he paid full face value, including interest, for these mortgages. There is no evidence to show that Kimball had any such relations with Sidney P. Pratt, the son of the treasurer, and engaged with him in defrauding the bank, as go to prove any knowledge on his part of anything irregular. I have carefully examined the transactions with which the son was connected, and which it is claimed are calculated to throw suspicion, at least, upon Kimball, and, in my opinion, the facts do not warrant any such inference. I have no reason to doubt Kimball's statement that he never saw Sidney P. Pratt but once to recognize him, and never had any conversation with him. The plaintiffs' charge of fraud or notice is not sustained by proof.

Another ground relied upon in this case is that the certificate received by Kimball was not a copy of the record of the bank with its fraudulent interpolation, but was a forgery of such record. The copy received by Kimball has the word "assign" placed before "discharge," while the fraudulent record places it after. The copy Kimball produces is the same as the copy found in Thompson's diary, (see *Holden* v. *Phelps*, 141 Mass. 456, 5 N. E. Rep. 815,) which was made by Thompson at least several months before the first purchase by Kimball. It also appears that the body of Kimball's copy is probably not in the handwriting of N. P. Pratt, but of his son, Sidney. As to the signature of this certificate, another son of Pratt testifies that he does not think his father wrote it; and Solon Bancroft, one of the receivers of the bank, testifies that he is familiar with Pratt's writing, and that he is quite confident it was not written by him.

By this means the plaintiffs undertake to establish that Kimball's certificate was not sent to him by N. P. Pratt, the treasurer and secretary, but that it came from Thompson, and was a forgery. Kimball swears that he asked Pratt if he had authority to assign mortgages; that he said he had, and would furnish a copy of the vote; and that, immediately after, he sent him the certificate, which he produces, by mail. This evidence stands uncontradicted. I think the defendant has fairly made out that the certificate, which is, in substance, a copy of the record of the bank, was received by Kimball from N. P. Pratt, secretary and treasurer, in the course of negotiating the sale of the first mortgages purchased, and it follows that, whether forged or not, it binds the bank as against an innocent party acting in good faith and without notice.

The point is taken by the plaintiffs that the receipt given by Kimball or the Appleton Bank shows, as to the securities it covers, that the transaction was a pledge, and not a sale. This question has already been carefully considered in *Whiting* v. *Wellington* and *Com.* v. *Reading Sav. Bank.* In the conclusion there reached, which is adverse to the plaintiffs' contention, I concur. There is no force in the objection that these purchases were on account of the Appleton National Bank, and that, therefore, no title passed because national banks are prohibited from taking mortgages. The evidence is far from supporting the proposition that these purchases were made on account of the Appleton Bank; but, even if they were, it could not avail these plaintiffs. *National Bank* v. *Matthews*, 98 U. S. 621; *National Bank* v. *Whitney*, 103 U. S. 99; *Fortier* v. *National Bank*, 112 U. S. 439, 5 Sup. Ct. Rep. 234; *Reynolds* v. *National Bank*, 112 U. S. 405, 5 Sup. Ct. Rep. 213.

I find nothing to take this case out from the decisions in *Whiting* v. *Wellington*, *Com.* v. *Reading Sav. Bank*, and *Holden* v. *Phelps*, and therefore the bill should be dismissed, with costs.