# FORTIER v. NEW ORLEANS NATIONAL BANK.

# NEW ORLEANS NATIONAL BANK v. FORTIER.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF LOUISIANA.

Argued November 17, 1884.—Decided December 1, 1884.

A bill was brought in the name of A. B. "in his capacity as president of the N. O. National Bank." Throughout the pleadings and all proceedings below it was treated as the suit of the bank. After appeal it was assigned for error that it was the suit of A. B., and, as A. B. and the defendant were citizens of the same State, that this court was without jurisdiction. *Held,* That the defendant was bound by the construction put upon the bill below, and that the objection to jurisdiction was too late.

In Louisiana the certificate of a judge under article 127 of the Code, that he has examined a married woman apart from her husband touching a proposed borrowing of money by her, and that he is satisfied that the proposed debt is not to be contracted for her husband's debt or for his separate advantage, or for the benefit of his separate estate, or for the community, is not conclusive, but casts on the wife the burden of proving that the money borrowed did not inure to her benefit.

A national bank may loan on security of a mortgage if not objected to by the United States. *National Bank* v. *Matthews,* 98 U. S. 621, and *National Bank* v. *Whitney,* 103 U. S. 99, affirmed.

These were cross-appeals from a decree in equity in a cause brought by "Albert Baldwin, in his capacity of president of the New Orleans National Bank, a corporation organized under the National Banking Law, against Celestine Louise Fortier," who was a married woman, the wife of Polycarpe Fortier.

The purpose of the suit was to enforce the collection of a note "drawn," as the bill averred, "by the said Celestine Louise Fortier to her own order, and by her indorsed with the authorization of her said husband, dated at New Orleans, March 16, 1877, payable one year after date, bearing interest at eight per cent. per annum from maturity until paid, for ten thousand dollars." Leon Godchaux was the payee of the note, who, after its maturity and but a short time before the suit was brought, transferred it to the New Orleans National Bank. The note was secured by a mortgage, executed by Mrs. Fortier, on three squares and six lots of ground in the city of New Orleans, which were her separate property. The bill by which the suit was commenced prayed for an order of seizure and sale of the mortgaged premises, as provided by the Code of Practice of Louisiana.

The mortgage was in the ordinary form of mortgages in Louisiana, and was executed in the usual manner before a notary public and competent witnesses. Appended to it was the following certificate:

"THE STATE OF LOUISIANA, *Parish of Orleans, City of New Orleans:*

"Fourth District Court for the Parish of Orleans.

"I, W. T. Houston, judge of the Fourth District Court for

the Parish of Orleans, do hereby certify that on this 14th day of March, 1877, personally came and appeared before me, at chambers, in the city of New Orleans, Mrs. Celestine Louise Labranche, of lawful age, the wife of Polycarpe Fortier, of this city, and by virtue of article 127 of the Revised Civil Code of Louisiana, I did then and there examine the said Mrs. P. Fortier, separate and apart from her said husband, and she stated that she appeared before me for the purpose of obtaining the certificate specified in said article to borrow the sum of ten thousand dollars for her separate benefit and advantage by mortgaging her separate property.

" I do further certify that then and there I examined her touching the object for which the said sum of money was to be borrowed, and that I have by her declaration, made on oath, ascertained to my satisfaction that the sum of ten thousand dollars, which the said Mrs. P. Fortier desires to borrow, is not for her husband's debts nor for his separate advantage or the benefit of his separate estate or for the community, but that the same is solely for her separate advantage, and I therefore give and sign this certificate in pursuance of said article, giving my sanction and authority to said Mrs. P. Fortier, with the authorization of her husband to hypothecate or mortgage her separate property for the purpose of borrowing the said sum of ten thousand dollars.

" Witness my hand and the seal of said court, this 14th day of March, 1877.

" W. T. HOUSTON, <em>Judge.</em>"

A writ of seizure and sale having issued as prayed for in the bill, Mrs. Fortier filed her plea and a cross-bill. In the latter she prayed for an injunction to restrain the seizure and sale of the mortgaged premises. The grounds upon which she based her defence to the original bill, and the relief prayed by her cross-bill, were as follows: Admitting that at and before the date of the note and mortgage she was separated in property from her husband, Polycarpe Fortier, she averred that she was possessed in her own right, as of a separate estate, of the property described in the mortgage: that the consideration of the note

sued on and secured by the mortgage was in part money lent to her husband by Godchaux, the payee, and in part the payment and satisfaction of a debt due from her husband to Godchaux.

To show that Godchaux knew that the money was not borrowed for the separate benefit of Mrs. Fortier, the cross-bill further averred that, before the execution of the mortgage by her, it was agreed between her husband and Godchaux that the loan should be secured by a mortgage on her husband's property; but the titles not proving satisfactory to Godchaux, it was agreed between him and her husband that the mortgage to secure the loan should be placed on her separate property, and that it should be transferred to the property of her husband when his titles were perfected. For the reasons stated it was averred that the note and mortgage sued on were not binding on her property.

There was an answer and demurrer to the cross-bill. The answer denied that the note sued on was given for any other purpose than that expressed in the certificate of the judge appended to the mortgage, and averred that the money raised on the note was all paid to Mrs. Fortier except the discount, amounting to $1,025, and the sum of $1,200, which was, by her direction, handed to the notary to pay taxes due on the mortgaged premises.

The demurrer applied to all those averments of the cross-bill "tending to show that the said note and mortgage granted by her," Mrs. Fortier, "to secure the same were not executed for her own use and benefit, in opposition to her sworn declarations made on her examination by the judge of the Fourth District Court and the certificate of the said judge to that effect, and to all those averments in regard to the application made of the money lent by said Godchaux on the faith of said mortgage."

It was shown by the evidence that the mortgage and note were executed in the office of the notary; that Mr. and Mrs. Fortier and Godchaux, the payee of the note and the mortgagee, were present; that upon the execution and delivery of the papers Godchaux retained from the $10,000, for which the note was given, first, the discount of 10 per cent. on the face of

the note, amounting to $1,025, and, second, the amount of a debt due from Mr. Fortier to him, being the sum of $1,800; that he gave his check to the notary for $1,200 to be applied to the discharge of taxes, &c., which were a lien on the mortgaged premises, and that he paid the residue of the $10,000 by handing to Mrs. Fortier his check on the Union National Bank for $5,975, payable to her order.

It was further shown that after Mrs. Fortier received the check it was deposited by Mr. Fortier, with her indorsement, to his own credit in the Louisiana National Bank, and the deposit was drawn out from time to time thereafter on his checks. The proceeds of the check for $1,200 handed to the notary were applied, after deducting the fees of the notary, to the payment of the taxes, interest and costs, which were a lien on the mortgaged premises.

Robert Duqué, a witness for the defendant, who appeared to be the friend and legal adviser of Mr. Fortier, the husband, testified that the latter, before the execution of the note and mortgage in suit, proposed to Godchaux to borrow of him $10,000 and to secure the same by a mortgage on the Fort Leon plantation, of which he was the owner; that Godchaux declined to make the loan on the security offered on account of some defect in the title, and that the loan was afterwards made on the security of the mortgage in suit, with the agreement between Mr. Fortier and Godchaux that when the former perfected his title to the Fort Leon plantation the mortgage should be transferred to it and the property of Mrs. Fortier released therefrom.

The testimony of Duqué on these points was directly and unequivocally contradicted by the deposition of Godchaux.

Godchaux also testified that before the loan was made to Mrs. Fortier he went to see the property which was afterwards mortgaged; that he was shown over it by Mrs. Fortier, who told him she wanted to borrow the money to improve the property and pay off the taxes due upon it.

This testimony of Godchaux, in reference to his inspection of the property and the statements of Mrs. Fortier, was not directly contradicted by her, although she was examined as a

witness in the case, nor was she questioned by her counsel in reference thereto. She testified that she received no money from Godchaux on the loan made by him, and that she did not receive any money on his check, which she admitted was indorsed by her, and that none of the money loaned was used for her separate benefit.

Upon final hearing the Circuit Court rendered a decree for the complainant, in the original bill for $7,860 with interest thereon from March 16, 1878, and five per cent. attorney's fees, having deducted from the amount appearing to be due upon the note of Mrs. Fortier the sum $2,140, that sum being the amount detained by Godchaux out of the proceeds of the note of Mrs. Fortier for the debt due him by Mr. Fortier, with the interest, &c. The court dismissed the cross-bill with costs. Both parties appealed.

*Mr. John A. Campbell* (*Mr. Thomas J. Semmes* was with him) for the bank.

*Mr. B. F. Jonas* (*Mr. Henry C. Miller* was with him) for Mrs. Fortier.

MR. JUSTICE WOODS delivered the opinion of the court. He stated the facts in the foregoing language, and continued:

It is first assigned for error by Mrs. Fortier, the original defendant, that as the bill was filed in the name of "Albert Baldwin, in his capacity of president of the New Orleans National Bank," against the defendant, who is alleged to be a citizen of Louisiana, it does not appear that the parties were citizens of different States, and, as no other ground of jurisdiction is averred, the Circuit Court does not appear to have had jurisdiction of the case.

If Baldwin was, in fact, the complainant, there was no ground stated in the petition upon which the jurisdiction of the Circuit Court could rest, and the objection to the jurisdiction could be made at any time. But the counsel for the bank insists that the bank, and not Baldwin, was the complainant. The question is, therefore, how is the bill to be construed?

It is clear, upon an inspection of the whole record, that the

suit was treated by both parties and by the Circuit Court as the suit of the New Orleans National Bank, and not of Albert Baldwin. Every pleading in the case, including the answer and cross-bill filed by the defendant, and every order and decree made by the court, was entitled "*The New Orleans National Bank* v. *C. L. Fortier.*" In the appeal bond given by the defendant the case was described in the same manner. The cause of action set out in the petition was the cause of action of the bank. The plea of the defendant to the original bill treated the bank as the complainant by averring that "the said bank is not the holder of the note for value, and that the note was sued on in the name of the bank merely to give the court jurisdiction." The answer to the cross-bill was styled the answer of the New Orleans National Bank. It averred that the bank was the holder of the note and mortgage sued on, and that the bill was intended to be, and was, the bill of complaint of the bank and not of Baldwin. There was no replication to this answer. It is plain, therefore, that the defendant carried on the litigation on the theory that the bank was the complainant, and the cause was entertained and decided by the Circuit Court on the same assumption.

We must adhere to the construction of the bill asserted by the bank and acquiesced in by the defendant. The defendant having herself so construed and treated the bill, will not be allowed on final hearing, in order to defeat the jurisdiction, to assert, for the first time, that Baldwin, and not the bank, was the complainant. It follows that the objection to the jurisdiction is not well taken.

We now come to the merits of the case. The contention of the counsel for complainant is, that Mrs. Fortier, having by the authorization of her husband and of the judge of the Fourth District Court, evidenced by his certificate, been empowered to borrow the money sued for to be used for her separate benefit and advantage, and to mortgage her separate property therefor, is concluded by the certificate of the judge, and cannot be heard to deny that the money was borrowed for her own use, or to assert that it was borrowed to pay her husband's debts, or for his separate advantage. On the other

hand, the counsel for the defendant insist that the money was in fact borrowed by Mrs. Fortier for the use of and to pay the debts of her husband, which Godchaux, the payee of the note, well knew, and that the money borrowed was so applied by the husband, and that she is not precluded by the certificate of the judge from showing these facts, and that being shown, they are a defence to the suit.

By article 2412 of the Civil Code of Louisiana of 1825, it was provided as follows: "The wife, whether separated in property by contract, or by judgment, or not separated, cannot bind herself for her husband, nor conjointly with him, for debts contracted by him before or during the marriage."

This article is now article 2398 of the Civil Code of 1870. The Supreme Court of Louisiana, construing it, has repeatedly decided that a debt contracted by a married woman, whether separated in property from her husband or not, could not be enforced against her unless the creditor established affirmatively that the debt inured to her separate benefit. *Dranguet* v. *Prudhomme*, 3 La. 74; *Pascal* v. *Sauvinet*, 1 La. Ann. 428; *Erwin* v. *McCalop*, 5 La. Ann. 173; *Brandigee* v. *Kew*, 7 Martin, N. S. 64; *Beauregard* v. *Her Husband*, 7 La. Ann. 294; *Moussier* v. *Zunts*, 14 La. Ann. 15. In the case last cited the court say: "It is a principle that has come down to us from the laws of Spain, that he who contracts with a married woman must show affirmatively that the contract inured to her advantage. The exception was when the wife renounced the 61st Law of Toro, but this exception no longer exists."

This article, thus construed, still continues to be the law of Louisiana, except as modified by the act of 1855, which now constitutes articles 126, 127, and 128 of the Revised Code of 1870. They are as follows:

"Article 126. A married woman over the age of twenty-one years may, by and with the authorization of her husband, and with the sanction of the judge, borrow money or contract debts for her separate benefit and advantage, and to secure the same, grant mortgages or other securities affecting her separate estate, paraphernal or dotal.

"Article 127. In carrying out the power to borrow money

or contract debts, the wife, in order to bind herself or her paraphernal or dotal property, must, according to the amount involved, be examined at chambers by the judge of the district or parish in which she resides, separate and apart from her husband, touching the objects for which the money is to be borrowed or debt contracted, and if he shall ascertain either the one or the other are for her husband's debts or for his separate benefit or advantage or for the benefit of his separate estate or of the community, the said judge shall not give his sanction authorizing the wife to perform the acts or incur the liabilities set forth in article 126.

"Article 128. If the wife shall satisfy the judge that the money about to be borrowed or debt contracted is solely for her separate advantage, or for the benefit of her paraphernal or dotal property, then the judge shall furnish her with a certificate setting forth his having made such examination of the wife as is required by article 127, which certificate, on presentation to a notary, shall be his authority for drawing an act of mortgage or other act which may be required for the security of the debt contracted, and shall be annexed to the act, which act when executed as herein prescribed, shall furnish full proof against her and her heirs, and be as binding in law and equity in all the courts of this State and have the same effect as if made by a *femme sole.*"

The effect of these articles is simply to establish a new rule of evidence in cases of loans of money made to married women.

The cases in which they have been construed by the Supreme Court of Louisiana show clearly that the contention of the complainant, that the certificate of the judge is conclusive evidence of the fact that the money lent to a married woman was for her sole benefit, and that she will not be allowed to contradict it, cannot be sustained. The construction put upon these articles is that the effect of the authorization and certificate of the judge was to relieve the creditor from the burden of proving that the money lent by him to the wife inured to her benefit, and to cast the burden on the wife to prove that it did not. *City Bank* v. *Barrow,* 21 La. Ann. 396, 398.

In the case of *Barth* v. *Kasa*, 30 La. Ann. 940, it was held that prior to the act of 1855 the burden of proof to bind the wife was on the creditor, but that under that act, when the judge's authorization had been obtained, the burden of proof rested on the wife to show that she was not bound.

In *Claverie* v. *Gerodias*, 30 La. Ann. 291, the plaintiff holding the note of Gerodias, a married woman, secured by mortgage on her paraphernal property, executed by the authorization of the judge, took out executory process thereon. Mrs. Gerodias filed an opposition thereto on the ground, among others, that her note and mortgage were given for the purpose of securing the debt of the husband to Claverie. The latter admitted that the note was executed by Mrs. Gerodias to enable her husband to obtain the means of carrying on his trade, " and was given by him to the respondent," Claverie, " for that purpose to the knowledge of his wife."

Upon these facts the court said: " The law forbids the wife to become security of her husband, or to bind herself or property for his debts. Her note for such a purpose in the hands of the husband's creditor, who takes it knowingly, is utterly void. The act of 1855 (now articles 126, 127, and 128 C. C.) has no application to such a case as is here presented." And the court affirmed the judgment of the lower court, which decreed the nullity of the mortgage, the erasure of its inscription, and directed the surrender of her note to Mrs. Gerodias, notwithstanding the fact that the note and mortgage had been executed by virtue of the authorization and certificate of the judge, as provided in the act of 1855.

In *Barth* v. *Kasa*, *ubi supra*, it was held that when a married woman has, even under the authorization of the judge, executed her note and mortgage on her separate property to secure it, she may show by way of defence thereto that she gave the note and mortgage for the debt of her husband, being induced thereto by her husband and the creditor.

So in *Hall* v. *Wyche*, 31 La. Ann. 734, it was held that the authorization of a judge to a married woman to borrow money and execute a mortgage to secure its repayment does not preclude her from proving that with the knowledge of the creditor

the mortgage was given to secure an antecedent debt of the husband due to him.

These cases show conclusively that the contention of counsel for the complainant cannot be maintained.

On the other hand, it does not follow that because the money borrowed by the wife with the authorization of the judge was used to pay her husband's debts the note and mortgage given therefor are void and cannot be enforced. To make such a defence good it must be shown that the creditor knew when he made the loan that the money was not to be used for the separate benefit or advantage of the wife; for the lender, having in good faith paid the money to the wife or to another by her direction, is not bound, since the passage of the act of 1855, to see that it is used for her benefit. It has been so held by the Supreme Court of Louisiana.

In *McClellan* v. *Dane*, 32 La. Ann. 1197, the defendant was a married woman who had executed by the authorization of the judge the note and mortgage sued on. She alleged by way of defence that the note and mortgage were obtained from her through the influence of her husband, who received the money for which the note and mortgage were given, and that therefore as to her they were without consideration. In support of her defence Mrs. Dane offered evidence tending to show that the money borrowed was subsequently received by her husband and by him used for his own purposes. This evidence was admitted by the court below, and its admission was declared by the Suprem. Court to be error. In giving judgment the court said: " The check representing the borrowed money was delivered to the wife, who indorsed the same and received the money which it called for, and to require more from the lender in such cases would be to defeat the very object of the law. . . . Our jurisprudence is firmly settled on this question, and it is unnecessary to quote authorities in support of the proposition that, in the absence of any allegation of fraud against the creditor himself, married women are bound, as all other persons, by their contracts and mortgages, executed under proper authorization, as required by the law of 1855 (Civil Code, 127 and 128), and cannot be allowed by parol tes-

timony to attempt to disprove the certificate of the judge and their own authentic declarations in acts of mortgage. Nor will the law authorize the inquiry into the subsequent disposition made of the funds borrowed by married women when properly authorized thereto. The law does not and cannot confer upon the lender in such circumstances the power and authority to watch over and control the acts of the married woman who has borrowed money from him, so as to prevent the improper use of the same."

In the still later case of *Dougherty* v. *Hibernia Insurance Co.*, 35 La. Ann. 629, the Supreme Court of Louisiana said: "Objections founded on the irregularity of the proceedings before the judge and on the use made of the money and the like, in the absence of fraud or complicity on the part of the lender, have no force. The jurisprudence is now well settled that in such case the lender is not bound to look behind the judge's certificate, and is not concerned as to the actual use of the money after it is paid to the wife or according to her direction." See also *Pilcher* v. *Pugh*, 28 La. Ann. 494; and *Henry* v. *Gauthreaux*, 32 La. Ann. 1103.

The result of these authorities, succinctly stated, is, that since the act of 1855, when a married woman, with the authorization of her husband and the sanction and certificate of the judge, borrows money, the creditor is not bound to show that the money was used for her separate benefit and advantage, but the debt may be enforced against her, and her separate property mortgaged to secure it, unless she shows that with the knowledge or connivance of the lender, the money was borrowed and used, not for her separate benefit, but for that of her husband.

This conclusion supports the decree of the Circuit Court. When Godchaux deducted and retained out of the money loaned on the note and mortgage of Mrs. Fortier, the sum of $1,800 to pay a debt due to himself from her husband, and paid over to her, or by her direction, only the residue, he was acting, so far as the sum just mentioned is concerned, in complicity with the husband and in fraud of the law, and he cannot shield himself under the authorization of the judge. This

sum, with the interest thereon, was properly deducted from the amount due on the note and mortgage. The $1,200 paid by Godchaux to the notary, by the direction of Mrs. Fortier, to clear off taxes, with the interest and costs which were a lien upon that property mortgaged by her, was applied for her separate benefit and advantage, and she cannot escape liability for it. As to the $5,975, the residue of the loan, we are of opinion that the defendant has not made it to appear affirmatively by preponderance of proof, as she was bound to do, that the money was borrowed by her with the knowledge or connivance of Godchaux to pay off the debts, or for the use of her husband. Godchaux, therefore, having handed to the defendant a check, payable to her own order, for the residue of the loan, his duty ceased. Under the act of 1855 he was not, as we have seen, bound at his peril to take care that she applied the money to her own separate benefit and advantage. So far, therefore, as the defence to the enforcement of the money paid by the check rested in the averment that the money borrowed of Godchaux was with his complicity borrowed for the use of the husband, and not for the separate advantage of the wife, it must fail.

Complaint is made in behalf of Mr. Fortier that the court erred in enforcing by its decree a loan of money made by a national bank on the security of a mortgage; the contention being that the loan on such a security was unauthorized by the national banking act, and was therefore void. In the case of *National Bank* v. *Matthews*, 98 U. S. 621, and *National Bank* v. *Whitney*, 103 U. S. 99, this point is expressly decided against the contention of the defendant, and in the latter case it was also held that an objection to the taking by the bank of a mortgage lien as security for future advances could only be made by the United States.

It follows from the views we have expressed that

*The decree of the Circuit Court must be affirmed.*