## MARCHAND *v.* GRIFFON.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF LOUISIANA.

No. 124. Argued and submitted December 19, 1890. — Decided May 25, 1891.

In Louisiana a married woman, sued upon a promissory note signed by her, and defending upon the ground that the debt contracted in her name did not énure to her benefit or the benefit of her separate estate, has the burden of proof to establish that defence.

A married woman having been authorized by her husband and a District Court in Louisiana to borrow money and to give her note secured by mortgage on her separate property for its repayment, is not estopped thereby from setting up, in an action on the note and mortgage, that the debt did not enure to her benefit or the benefit of her separate estate, and from averring and showing facts which constitute a fraud upon her in law, although the word fraud is not used in her plea: and if it appear

that the holder of the note and mortgage had advanced the money to the husband, knowing it to be for his sole benefit, neither the wife nor her property would be bound for its payment.

A court is not bound to repeat, in the words of a request for instructions, instructions which have already been given in substance in another form.

THE case is stated in the opinion.

*Mr. Charles W. Hornor* and *Mr. George A. King* for plaintiff in error.

*Mr. Edgar H. Farrar*, *Mr. Ernest B. Kruttschnitt* and *Mr. B. F. Jonas* for defendant in error, submitted on their brief.

MR. JUSTICE LAMAR delivered the opinion of the court.

This was an action at law brought in the Circuit Court of the United States for the District of Louisiana, by Alfred Marchand, a citizen of the Republic of France, against Josephine Adèle Livaudais, wife of Charles Lafitte, to recover the sum of $5000, with interest, costs and damages, which alleged indebtedness was represented by two promissory notes executed by the defendant, and held by the plaintiff.

The petition, filed on the 23d of November, 1886, alleged that, at New Orleans, on the 15th of January, 1868, the defendant, duly authorized by her husband, made her note for the sum of $5000, at one year, to her own order, and by her endorsed, with eight per cent interest from maturity until paid; that to secure the payment of the same, with interest and attorney's fees, she, on that day, under authority of the judge of the Second District Court for the parish of Orleans, executed a mortgage, before one Cuvillier, notary, in favor of any holder of the note, upon certain of her real estate in that parish; that thereafter, on October 30, 1879, for the purpose of securing an extension of time for the payment of the note above described, and in order to furnish a note negotiable in form, without in any manner novating it, the defendant executed another note for $5000, payable January 15, 1881, with eight per cent interest from maturity, and to secure the same executed another mortgage before one Fahey, notary,

upon the same property, covered by the prior mortgage ; that upon the payment of either of those notes the other was to be considered null and void ; that neither of those notes ever was paid ; and that there was then due thereon the sum of $5000, with eight per cent interest from August 25, 1885, until paid, together with five per cent attorney's fees on both principal and interest.

The prayer of the petition was for a judgment in favor of the plaintiff and against the defendant for the above-mentioned sum, with a reservation to the plaintiff of all rights and actions in equity in and to the before-mentioned special mortgages, and for general and equitable relief.

The defendant answered, admitting that she signed the notes sued on, but denying any liability on them. She then averred that she never received any consideration for the notes; that the first note passed from her husband, Charles Lafitte, to the Merchants' Mutual Insurance Company, a corporation domiciled in New Orleans ; that the renewal endorsed thereon in 1874, and the second note described in the petition and the mortgage securing it, were signed by her under the pressing solicitations of the officers of that company, and under the controlling influence of her husband ; that when her signatures to those instruments were given the officers of the company well knew that she was not liable on the notes, and had never received any consideration for them, she having notified them at those dates that, although yielding to their demand to endorse the notes, she would never pay, because there was nothing due from her; that the company was still the holder of the notes, or if not, the plaintiff herein had taken them after maturity, and therefore had no greater rights in the matter than the company; that no demand had ever been made upon her for the payment of the notes since the 19th of October, 1879, no acknowledgment of the notes or debt had been made by her since that date, and no payments had been made by her on either the principal or interest of the notes; and that the notes were extinguished by the prescription of five years, which prescription was pleaded in bar of the action;

Further answering, she averred that the notes were issued

by her husband for his own use and benefit, and not for her separate use and benefit, and that no part of the consideration received by him had ever enured to her benefit; and that the notes, although issued in her name, really constituted an obligation of her husband and not of herself, and that they had been paid by him.

The defendant then assumed the character of a plaintiff in reconvention, and averred affirmatively that she had never received any consideration from either of the notes sued on, and that if any consideration was ever given for them it was not given to her and did not enure to her benefit; and that the notes were prescribed on their face, and the mortgages referred to in the petition were extinguished, null and of no effect, and should be cancelled.

Wherefore she prayed that the suit of the plaintiff be dismissed at his costs; that there be a judgment in her favor against the plaintiff decreeing that she was not liable on the notes, that they were not her legal obligations, and that they and the mortgages be cancelled and erased; and for general relief.

There was a trial before the court and a jury, resulting in a verdict and judgment in favor of the defendant; and the plaintiff thereupon prosecuted a writ of error. Since the argument of the case here, at the present term, the defendant has died, and her heirs have been made parties in her stead.

There were three bills of exceptions taken at the trial. It appears from the first one that, on the trial of the case, the plaintiff, to maintain the issue on his part, introduced evidence tending to show the following facts: On the 15th of January, 1868, the defendant, being duly authorized by her husband and a judge of the Second District Court of New Orleans, as provided by the Civil Code of Louisiana, executed three notes of $5000 each, and, to secure the payment thereof, granted a mortgage in favor of any holder of them on certain described real estate. These notes were similar in all essential features. Two of them were negotiated by the defendant and are not in issue here.

In June, 1873, nearly five years after the note in suit became

due, Charles Lafitte, the husband of the defendant, obtained a loan of $5000 on his own individual note, from the Merchants' Mutual Insurance Company, a Louisiana corporation, of which he was then a director, and, as collateral security therefor, pledged this note of his wife, at the same time representing to the company that the interest thereon had been paid to the 4th of January, 1874, although the note itself bore no endorsements of interest paid.

Afterwards, on the 3d of January, 1874, this note was presented to the defendant by the insurance company, for the purpose of having her renew it, and she then made the following endorsement upon the back of it:

"By consent, the payment of this note is extended for one year from date without novation.

"New Orleans, 3d January, 1874.

"(Signed)   J. A. LAFITTE."

There was conflicting evidence as to what was assented to by the defendant, at the time of this renewal of the note, as to the payment of interest.

On or about the 22d of October, 1879, various amounts of interest having been paid by Charles Lafitte upon his own note, and also upon the note of his wife up to that date, the insurance company applied to Lafitte for the payment of this note, and threatened, in case of its non-payment, to bring suit upon it, which threat was conveyed by Lafitte to the defendant. On the 30th of the same month the defendant executed another note to Paul Fourchy, president of the insurance company, and to secure its payment gave a mortgage upon the same property as was embraced in the preceding mortgage. There was no evidence adduced showing any authorization from a judge for the execution of this latter note by the defendant.

The act of mortgage recites that Fourchy is the holder of the original note, and that the new note was not a novation of it, but was merely an accommodation to Fourchy to furnish him a note negotiable in form, and was executed in consideration of the extension of her original note.

The interest on this last note was paid by Charles Lafitte, in various payments, up to August 25, 1885, since which date no payment either of principal or interest has been made.

In September, 1886, the defendant, being desirous of selling the property covered by the mortgage, offered to pay, as a matter of compromise, a certain sum of money to have the notes and mortgages cancelled, at the same time expressly denying her liability on them.

On the 9th of October, 1886, the insurance company sold the notes in suit to the plaintiff, who knew all the facts above stated with reference to the history of them.

The defendant, to maintain the issue on her part, testified in her own behalf that she never issued the note in question to any other person than her husband; that she never received any benefit from the same, either to herself or to her estate; that she administered her paraphernal property separate and apart from her husband; that of the three notes given to secure the common mortgage sued upon here she had issued two and had received the amount of the same, to wit, ten thousand dollars, which she had used for the benefit of her separate paraphernal property; that she made the mortgage for fifteen thousand dollars, with the expectation of making repairs and improvements upon her separate paraphernal property, but that she never used the third note and never issued it except to her husband.

To this testimony the plaintiff objected on the ground that the law did not permit her, under the allegations of her answer, to contradict her affidavit, under which she was authorized to effect the loan on her separate property set forth in the act of mortgage; that the allegations of her answer — as she had not pleaded fraud — did not permit her, in connection with the acquisition of the said note by the said insurance company, to introduce evidence as against her written act, and her notarial acts, concerning the ownership of said notes; and that the allegations of her answer, in the absence of any allegation of fraud, did not enable her to introduce any evidence to prove any want of original consideration for the note.

The court overruled the objection, and the plaintiff excepted.

The second bill of exceptions states that at the close of the testimony "the court instructed the jury that, since the assignor of the plaintiff had acquired the note sued on, after maturity, from the husband of the defendant, as collateral security for a loan made to him personally, and distinct from any property of his wife, and that the note, on its face, was the note of a married woman, the jury were at liberty to consider the question whether the defendant had ever received any consideration for the said note, and whether the defendant had ever issued the same; that under the laws of Louisiana, though there was an authorization by a judge, if, as a matter of fact, the person taking the note of a married woman made the advance directly to the husband, and knew that the advance was made to him, the wife would not be bound for the note, nor would her property; that the statements of the husband, made to the assignor of the plaintiff, unless authorized by the plaintiff, did not bind her, and that the defendant was not estopped from proving the facts to which she herself testified, as set forth in the offer to prove, referred to in bill of exceptions No. 1; and if they found from the evidence, as a fact, that the note in suit had never been issued by the defendant until she delivered it to her husband; that it was passed to the assignor of the plaintiff after maturity, and upon its face was the note of a married woman, and the plaintiff knew that the loan was made to the defendant's husband, for his benefit and not for hers, and delivered the money to him; and that the defendant received no part of it, then their verdict must be for the defendant."

To this instruction, and to each proposition contained in it, counsel for the plaintiff objected and reserved exceptions.

The third bill of exceptions states that the counsel of the plaintiff asked the court to give to the jury the following instructions:

"First. That parol evidence was not admissible to show that the money borrowed on the note made by a married woman, under proper judicial authority, was received and

used by the husband for his own personal use, there being no allegation of fraud or bad faith.

"Second. That where the wife represents to the judge in her application for leave to borrow money that she requires a certain sum, and in order to enable her to realize the same she gave a mortgage on her separate property, and he grants such authority, she is bound by the act of mortgage placed thereon and by the notes secured by such mortgage, after the same leave her possession or control, whether through her husband or otherwise, in the absence of any or all allegations that said notes were obtained by fraud or ill practices on the part of the husband or subsequent holder through him.

"Third. That whereas in this case the wife has not specially pleaded fraud in the obtaining of said notes by the insurance company or its assignee, the plaintiff, and has been the sole and only witness on her own behalf under allegations in her own behalf, such evidence, having been objected to, ought to be excluded from the consideration of the jury; and if it be considered by them at all should be held to be insufficient in and of itself to authorize her to be released from her obligation on said note; that it having been shown that the husband conducted the affairs of his wife relative to her separate property, and it being shown that the wife in good faith gave to her husband the note herein sued upon for the purpose of realizing funds in the event that the same should be needed, and having been benefited thereby, she is precluded under the law from attacking the rights of the holders of said notes, who in good faith have parted with their money upon representations made by her under oath to the proper judge to make the note and mortgage to secure the same, after she has shown that the note was voluntarily given by her to her said husband for the uses and purposes which she testified and expressed as necessary for the benefit of his business thereafter.

"Fourth. That the defendant is estopped by her admissions in the act of acknowledgment of the 30th October, 1879, from attacking the ownership of the insurance company and its president, Paul Fourchy, in and to said note; that the acts of her husband in paying the interest thereon to that date, her own

acts in extending the payment of that note to a future date, or
the subsequent acts of her said husband, done in like manner
and form, in paying interest on said note thereafter to the 25th
August, 1885, or of setting up no defence of want of consider-
ation thereafter, without any defence being pleaded of coer-
cion on the part of the husband, and his acts in the premises
are her acts, she having recognized by said acknowledgment
of the 30th October, 1879, his authority as her agent.

"Fifth. That the act of the wife in endeavoring to obtain
money for herself, her husband or her family, by a mortgage
of her paraphernal property, by and under due and proper
authority of the laws of the State of Louisiana, with the con-
sent of her husband, is binding upon her. She cannot be per-
mitted, where by reason of her own acts she or her husband
have received the full consideration of the note declared upon
herein, which went either to her own separate use and benefit
or that of the community, or be permitted, without an allega-
tion of fraud, knowledge on the part of the insurance company
or its assignee, to injure such insurance company or its as-
signee, after having received full consideration of the insur-
ance company and assignee and profited thereby, and to
injure them or either of them in her own interest."

But the court stated to the jury that the issues upon the
evidence in the cause were such as had been stated to the jury
in its general instructions, set forth in the second bill of excep-
tions; and instructed the jury that if they found the issuing
of the note by the defendant to have been merely to her hus-
band; that the party taking the same, the assignor of the
plaintiff, knew that it was the note of a married woman, and
that the consideration which the husband was receiving there-
for was a consideration for himself, and not in any respect for
her estate; and that neither the defendant nor her estate was
benefited by the loan made her husband, and she received no
part of the money arising therefrom, then their verdict must
be for the defendant.

To which instructions, and to the refusal on the part of the
court to give the instructions requested, the defendant ex-
cepted.

The assignments of error are based on these three bills of exceptions. Concisely stated, the first assignment is, that it was error, under the pleadings, to admit the parol evidence of Mrs. Lafitte to show that she had never received any consideration for the notes, because her answer does not specifically aver that any fraud was practised upon her in the execution of them. The argument is, that Mrs. Lafitte having been authorized by her husband and the judge of the District Court to borrow money and give a mortgage as security for its payment, upon her separate property, cannot be allowed to prove that the money received on her note was not used for the benefit of her separate property. In other words, that contention is, that by her own acts in relation to the notes and mortgages she should, not having specifically pleaded fraud, be estopped from saying that she did not receive the money and apply it to her own separate estate.

We do not think this contention is sound. It is immaterial if the specific word "fraud" was not used in the answer, if the facts set forth therein constitute what is denominated fraud in law. Under the law of Louisiana, a married woman cannot bind herself for her husband for his debts. Article 2398 of the Civil Code is specific on this point. It provides as follows: "The wife, whether separated in property by contract or by judgment, or not separated, cannot bind herself for her husband, nor conjointly with him, for debts contracted by him before or during marriage."

This section appeared in the Civil Code of 1825, as section 2412. The construction put upon it by the Supreme Court of Louisiana was that a debt contracted by a married woman could not be enforced against her unless the creditor established affirmatively that the contract enured to her benefit. *Fortier* v. *New Orleans Bank,* 112 U. S. 439, 446, and cases there cited.

The only modification ever made of this section was by an act of the Louisiana legislature passed in 1855, which is now embodied in sections 126, 127 and 128 of the Civil Code of 1870. They are as follows:

"Article 126. A married woman over the age of twenty-

one years, may, by and with the authorization of her husband, and with the sanction of the judge, borrow money or contract debts for her separate benefit and advantage, and to secure the same, grant mortgages or other securities affecting her separate estate, paraphernal or dotal.

" Article 127. In carrying out the power to borrow money or contract debts, the wife, in order to bind herself or her paraphernal or dotal property, must, according to the amount involved, be examined, at chambers, by the judge of the district or parish in which she resides, separate and apart from her husband, touching the objects for which the money is to be borrowed or debt contracted, and if he shall ascertain either the one or the other are for her husband's debts or for his separate benefit or advantage, or for the benefit of his separate estate, or of the community, the said judge shall not give his sanction authorizing the wife to perform the acts or incur the liabilities set forth in article 126.

" Article 128. If the wife shall satisfy the judge that the money about to be borrowed or debt contracted is solely for her separate advantage, or for the benefit of her paraphernal or dotal property, then the judge shall furnish her with a certificate setting forth his having made such examination of the wife as is required by article 127, which certificate, on presentation to a notary, shall be his authority for drawing an act of mortgage, or other act which may be required for the security of the debt contracted, and shall be annexed to the act, which act, when executed as herein prescribed, shall furnish full proof against her and her heirs, and be as binding in law and equity in all courts of this State, and have the same effect as if made by a *femme sole*."

It is well settled that the only effect of these articles is to shift the burden of proof from the creditor to the married woman. So that now the law is that the burden is upon the wife to show affirmatively that the debt contracted in her name did not enure to her benefit or to the benefit of her separate estate. 112 U. S. 447.

In *Fortier* v. *New Orleans Bank, supra,* all of these sections were very carefully considered, in the light of the Louisiana

decisions bearing upon them, and it was held, Mr. Justice
Woods delivering the opinion, that the certificate of the judge
was not conclusive evidence of the fact that money lent to a
married woman was for her sole use and benefit; but that she
might be allowed to contradict it, the burden of proof being
upon her to show that it did not enure to her benefit.

In *Chaffe* v. *Oliver*, 33 La. Ann. 1008, 1010, it was held that
in transactions of this nature parol evidence was admissible to
prove that the debt for which the note and mortgage were
given was in reality the debt of the husband, and was not con-
tracted by the wife for her own use and benefit. The same
doctrine was announced in *Barth* v. *Kasa*, 30 La. Ann. 940,
and also in *Harang* v. *Blanc*, 34 La. Ann. 632, 635; and it is
not open to question.

Such being the law of the case, it was not error on the part
of the court to give the instruction set forth in the second bill
of exceptions. The established facts were, that the insurance
company received the first note long after it was due, and
merely as collateral security for a loan made to Charles Lafitte,
the husband of the defendant; that the second note was not a
novation of that note, but was merely an accommodation
note, representing the original indebtedness, and was given by
the defendant under the controlling influence of her husband
and upon the pressing solicitations of the insurance company;
and that the plaintiff herein was cognizant of those facts when
he purchased them. The law being that the wife could not be
bound for the debts of her husband contracted during cover-
ture; that she might be allowed to prove by parol evidence
that no part of the consideration of the notes enured to the
benefit of her separate estate; and the note on its face show-
ing that it was the note of a married woman; it was certainly
not error to instruct the jury that they might consider the
question whether the defendant had received any considera-
tion for the note. The second proposition contained in this
charge of the court was, that, though there had been an author-
ization by the judge, if, as a matter of fact, the company tak-
ing the note had advanced the money to the husband, know-
ing it to be for his benefit, the wife would not be bound for

the payment of the note, nor would her property be bound. That such is the law of Louisiana we think there can be no doubt. *Claverie* v. *Gerodias*, 30 La. Ann. 291, 293; *Fortier* v. *New Orleans Bank, supra,* and cases there cited.

It is equally clear that any statements made by the husband with reference to interest having been paid upon the first note up to January 4, 1874, cannot bind the wife, especially as there were no endorsements of interest on the note itself.

With respect to the execution of the second note and the mortgage, on October 30, 1879, the case is no better. No new consideration passed, and they represented the same indebtedness as the first note and mortgage — an indebtedness which we have shown was not binding on the wife or on her separate estate.

With respect to the five instructions asked for by the plaintiff, which the court refused to give, very little need be said. The bill of exceptions states that the court refused to give those instructions for the reason that the issues upon the evidence which had been introduced were such as had been stated by the court in its general charge as embodied in the second bill of exceptions. So far as these instructions were correct and were applicable to the facts of the case, the substance of them had already been given to the jury in the general charge, as set forth in the second bill of exceptions, and the refusal of the court to repeat them in other language was not error.

There are no other features of the case that call for special mention. We are satisfied that the judgment of the court below was correct, and it is

*Affirmed.*

Mr. Justice Brown, not having been a member of the court when this case was argued, took no part in its decision.

The Chief Justice was not present at the argument, and took no part in the decision.