Hal FULENWIDER, Jr., and Marion Fulenwider, individually and as co-partners d/b/a Easy Glitter Wax Co., Appellants,

v.

Elmer WHEELER, Appellee.
No. 17147.

United States Court of Appeals
Fifth Circuit.

Dec. 23, 1958.

Rehearing Denied Feb. 5, 1959.

Richard F. Ralph, Walter Humkey, Fowler, White, Gillen, Yancey & Humkey, Miami, Fla., of counsel, for appellants.

Don G. Nicholson, Miami, Fla., Sinclair & Nicholson, Miami, Fla., of counsel, for appellee.

Before HUTCHESON, Chief Judge, and CAMERON and BROWN, Circuit Judges.

HUTCHESON, Chief Judge.

Appellants Fulenwider appeal from a judgment for $25,000, rendered upon ·jury verdict by the court below in favor of appellee Wheeler for breach of a contract of employment for one year beginning February 1, 1955. The contract called for the payment of $50,000, and appellants had paid appellee $10,908. Appellants raised questions concerning whether appellee was properly performing his contract and, on August 24th, directed a lengthy letter to appellee calling upon him to perform detailed services over a period of five or six months, which they contended were embraced in and required by the contract. After an exchange of letters, lengthy records, and one or more telephone conversations, which were read into evidence, appellants wrote appellee August 31, 1955, stating: "In view of your failure to perform under our agreement we have no alternative but to conclude that you have terminated our agreement * * * I have reluctantly turned the matter over to our attorney for study and advice with respect to losses suffered by us due to your failure to perform our agreement."

The matter comes here in this way. Alleging: that on January 27, 1955, plaintiff was a highly specialized and widely known national adviser-consultant in the conception, initiation, designing, implementation, guidance and management of sales programs and promotions, and that on that day he and defendants entered into a contract that between February 1, 1955, and February 1, 1956, plaintiff would work with defendants in an effort to increase defendants' sale program, policies, organization and technique, for which defendants agreed to pay plaintiff $50,000; and further alleging: that immediately thereafter plaintiff entered upon the performance of, and performed, the contract until August 31, 1955, when defendants, wrongfully repudiating and breaching it, discharged plaintiff from their employ and prevented his further performing; plaintiff brought this suit to recover his damages.

The defendants answered, denying plaintiff's charge and, alleging by counter claim, which was later abandoned, that it was plaintiff who had breached his contract and the defendants who were damaged, sought judgment for $60,000.

The cause coming on for a jury trial on the issues thus joined on plaintiff's demand, and, evidence abundantly sustaining plaintiff's claims, indeed admitting of no reasonable view to the con-

trary having been offered, the cause was sent to the jury on a charge, which was fully discussed with the court and agreed to by the parties, and to which no objection or exception was taken, and there was a verdict and judgment for plaintiff.

■ Conceding, as they must, that the evidence fully supports, if indeed it does not demand, the verdict for plaintiff, appellants present three specifications of error [1] and seek a reversal based on rulings which rested largely in the sound discretion of the court and which, under the evidence in this case, where the verdict and judgment are clearly in accord with the truth and right of it, may be made the basis for reversal only where it is made to appear not merely that the ruling might have been the other way but that, as made, there was a grave and serious abuse of discretion and substantial injury resulting therefrom, and this is not shown here.

Examining each of the specifications in turn, in the light of the record, we are of the clear opinion that not one of them presents a reason for reversal of the judgment, and it must be affirmed.

■ Of the first, the denial of defendants' request to require production of plaintiff's income tax returns, it is sufficient to say that the whole matter of discovery is one resting within the sound discretion of the trial court, that there is no showing made on this record, there could not be, that the court below abused its discretion, none that if there was error, it was, or could be, prejudicial.

■■ The second specification is no better taken. The conversation between Koonce and Barge, to which Barge testified by deposition, only a brief part of which was offered, occurred just after the writing by Koonce of the crucial letter to Wheeler, in which he made the wholly unwarranted, indeed fantastic demands on him, which as the jury found, the defendants intended and hoped Wheeler would refuse, giving them grounds, as they thought, for discharging him.

Under the undisputed evidence in this case, Koonce was not merely the sales manager, a highly placed and responsible officer in defendants' organization but, as testified to by Fulenwider, he was a real part of it, and had a working interest in it, in that, instead of drawing his money out, he had put it in the business. It was Koonce, too, who in collaboration with Fulenwider, wrote the letter which, considering Wheeler's equipment, accomplishments, and activities, the nature of his business and the circumstances of his employment, including the large compensation agreed to be paid him, made wholly unreasonable demands upon him. These included a demand that he absent himself from his office for five or six months and travel about the country with Koonce from filling station to filling station when Fulenwider, himself, testified that it had been agreed that Wheeler was not to be absent from his own office for a lengthy period.[2]

1. These are:
    (1) The Court erred in denying defendants' motion to require the production of plaintiff's income tax returns for the several years, 1953, 1954, 1955, and 1956.
    (2) The Court erred in admitting into evidence over objection of counsel for the defendants, testimony from the deposition of Claude Barge with reference to conversations between himself and Jack Koonce.
    (3) The Court erred in denying the defendants' motion to vacate judgment on the grounds specified in Rule 60(b) of the Federal Rules of Civil Procedure, and for new trial.

2. To questions asked him by deposition, Fulenwider testified:
    "Q. Exactly what was it that Elmer Wheeler was supposed to do for Easy Glitter under the agreement as you claim it existed? A. He was to prepare and help prepare material to be put in printed form to aid our sales organization. He was to be at various locations to conduct training sessions of these men in how to use these sales training aids. He was also to appear at various locations with a program specifically designed for the service station operator so that he could conduct these little meetings to where the men running the service sta-

In these circumstances, with Koonce's letter the storm center of the whole case, there is, we think, no basis for the claim that statements made by him as sales manager and general factotum, shortly after writing the letter and while the scheme for getting rid of Wheeler was still under way, are not admissible as a part of the res gestae of the whole transaction and as showing the state of mind of those responsible for the campaign. Under the undisputed evidence, the contention of appellants that, when this conversation with Barge was had, Koonce was performing no duties for defendants, is clearly without merit.[3] The plan had been formed, the stage had been set, and it was only a question of a day or so before it would be known with what effect.

We are, therefore, of the clear opinion that the judge was right in admitting the testimony and no error was shown. We are further of the opinion that, taking the record in this case as a whole, if there was error, it was not prejudicial but harmless error because the facts conclusively established the making and carrying out of the scheme to force appellee out. Cf. Patterson v. Pennsylvania R. R. Co., 6 Cir., 238 F.2d 645; Community Natural Gas Co. v. Henley, 5 Cir., 54 F. 2d 59, at page 61; Kilmer v. Gustafson, 5 Cir., 211 F.2d 781; F.R.C.P. Rule 61, Harmless Error, 28 U.S.C.A.

■■ We come, then, to the third specification, Barge's recantation affidavit, to say of it that the district judge not only acted with discretion in refusing the motion for new trial under Rule 60(b) Rules of Civil Procedure, but that it would have been an abuse of his discretion to act otherwise. For, as the authorities, collected in 28 U.S.C.A. and Supplements in the notes under Rules 59 and 60, Rules of Civil Procedure, uniformly declare, it is in the absence of a clear abuse of discretion for the trial judge and not the appellate judges to say whether the case is one for setting aside the verdict, and the district judge should not set aside a verdict on such a motion unless it appears to him that the tendered evidence is of such a nature that if offered on a new trial, it would probably change the outcome. English v. Mattson, 5 Cir., 214 F.2d 406, Ferrell v. Trailmobile, Inc., 5 Cir., 223 F.2d 697, Newman v. United States, 5 Cir., 238 F. 2d 861, Tomley v. United States, 5 Cir., 260 F.2d 468, and many other cases which are cited in the notes to the rules show that only in extreme and unusual cases will a court of appeals be justified in interfering with the action of the district judge, and the undisputed evidence shows that this is not such a case.

In plaintiff's answering affidavit, he not only categorically refutes Barge's statements tendered in recantation, that he perjured himself in some respects on the trial, but supports the refutation by attaching a letter to the plaintiff written by Barge before the suit was filed, which, asking Wheeler to join a claim for him in his suit against the defendants, is entirely consistent with his deposition testimony and wholly inconsistent with his recanting.

In denying the motion "without prejudice to the defendants to proceed by independent action as otherwise provided

tions could come from a radius of about fifty miles that care to come and attend them, and pick up whatever pointers they might be able to pick up."

"Q. Did you contemplate at the time the agreement was negotiated and entered into in January of 1955 that Mr. Wheeler would be required to leave Texas and be on the road for as much as six months at a time? A. No."

3. Braswell v. United States, 5 Cir., 200 F.2d 597; Carantzas v. Iowa Mutual Ins. Co., 5 Cir., 235 F.2d 193; Garford Trucking Corp. v. Mann, 1 Cir., 163 F. 2d 71, certiorari denied 332 U.S. 810, 68 S.Ct. 112, 92 L.Ed. 388; Jacksonville Paper Co. v. N. L. R. B., 5 Cir., 137 F.2d 148; Johnson v. J. H. Yost Lumber Co., 8 Cir., 117 F.2d 53; Mattox v. News Snydicate Co., 2 Cir., 176 F. 2d 897, 12 A.L.R.2d 988, certiorari denied 338 U.S. 858, 70 S.Ct. 100, 94 L. Ed. 525; Reynolds v. United States, 5 Cir., 225 F.2d 123, certiorari denied 350 U.S. 914, 76 S.Ct. 197, 100 L.Ed. 801.

by rule or statute", the district judge acted well within his discretion.

The judgment was right. It is affirmed.

CAMERON, Circuit Judge (dissenting).

I am unable to agree with the majority opinion in its holding that Barge, the disgruntled former employee of appellants, could testify over the repeated objection of appellants to a conversation had between Barge, Koonce and Atwood in a hotel room some days after the letter the majority opinion describes as containing fantastic demands had been written. The situation is not changed by the majority description of Koonce as sales manager and one who was acquiring a working interest in the appellants' business by leaving his earnings in the business instead of drawing them out. The appellants, Hal Fulenwider, Jr. and Marion Fulenwider, were sued as individuals and co-partners and the verdict was rendered and the judgment entered against them as such. Whatever his authority, Koonce was nothing more than an agent, and the conversation related to actions which had already been taken. The conversation took place in a hotel room at a time when no business of the partnership was being transacted, but when the participants were engaged in idle bragging and gossip about the letter which had already been written.

Appellee had placed Koonce upon the stand and asked only a few questions, all relating to whether he had made certain statements to Barge in the conversation referred to. Barge was permitted by deposition already taken to relate all of the details of what he, Koonce and Atwood had said in the hotel conversation.[1] It is clear to me that these casual statements made by one agent of appellants, individuals, to other agents was not admissible evidence. The majority opinion seems to invest what was said by Koonce with some sort of special status. The Supreme Court has ruled that declarations made under like circumstances by the *president of a banking corporation* were inadmissible, Goetz v. Bank of Kansas City, 119 U.S. 551, 560, 7 S.Ct. 318, 323, 30 L.Ed. 515:

> "The testimony of one of the plaintiffs and of one of his attorneys was offered as to declarations of the president of the bank, made several days after the last draft had been discounted, to the effect that the bank had become largely involved in certain wool transactions with Du-Bois as early as July or August, 1881, and would have broken off its relations with him if it had not been that this wool matter remained un-

---

1. A few quotations will show the crucial importance of Barge's testimony concerning this conversation:

"He [referring to appellee Wheeler] wouldn't go out and work like that. I says, 'He's sort of a celebrity; in his field he is kind of like Bob Hope * * in the movie field.' I says 'Wheeler is similar to him in his sales—knowledge in the sales field. * * * He's a celebrity. * * * It would just be a slap in the face.' And Koonce agreed with me on that. But he still thought Wheeler would show up and work.

\* \* \* \* \*

"* * * That's when he [referring to Koonce] said they was carrying him to West Palm Beach to rake him over the coals. He said Wheeler thought he was coming down there for a little fun, but he was going to find out there was no fun to it. In other words, they gave the attitude they was getting tough with Wheeler.

\* \* \* \* \*

"* * * Jack [Koonce] said that Hal was going to allow him to go home I believe one day for Christmas, but that he wanted him to work on the sales manual while he was there in the peace and comfort of his home where he could concentrate and think. * * * Jack was just telling me that he had talked with Hal over the 'phone and that Hal had written the letter; and that he [Wheeler] *was going to have to go on and get his clothes and get packed up* and be up there because the only thing he hated about it was that he was going to have to work with the S.B. That's the exact words he used. Of course, it was just a matter of talking—which is very commonly done with people sitting around talking."

settled. The testimony was excluded, and rightly so. The declarations had no bearing upon the good faith of the officers of the bank in the transactions in this case; and if they had, being made some days after those transactions, they were not admissible as part of the *res gestae* any more than if made by a stranger. Evidence of declarations of an agent as to past transactions of his principal are inadmissible, as mere hearsay." [2]

Appellee sought to weave into the texture of the case, subtly and otherwise, that Koonce, Barge and Atwood collaborated with appellant Fulenwider in the effort to discover or manufacture grounds and methods for discharging Wheeler, and this aspect of the case necessarily loomed large in the minds of the jurors. Barge's testimony as to statements made in the hotel conversation tended to invest all of appellants' dealings with Wheeler with a taint of fraud. It is patent that appellee placed Koonce upon the stand merely to place in the record a denial of the statements to Barge so that the deposition of Barge already taken could be offered in evidence. It is not permitted, in my opinion, that a litigant thus set up a man of straw in order that he may proceed to destroy him. Such is the import of a long line of cases from this Court.[3] The atmosphere, largely contributed to by this portion of the Barge deposition, made it highly improbable, in my opinion, that the jury could try the case fairly and reach a conclusion which was not the product of passion.

My disagreement extends also to the holding of the majority opinion as to appellants' third specification of error based upon the claim that the trial court erred in denying their motion under Rule 60(b), F.R.C.P. to vacate the judgment and grant a new trial. Appellants had filed a motion for new trial under Rule 59, and their appeal notices covered the adverse orders entered by the court below on both motions.

With the motion under Rule 60(b) was filed the affidavit of appellant Marion Fulenwider that the final judgment was obtained by fraud in that plaintiff, appellee, had procured and placed before the court testimony of Claude Barge which was false, untrue and inaccurate. Exhibited with the motion was an affidavit executed by Barge in New York City November 20th setting forth that Wheeler had promised to pay him $10,-000 if he won his suit and on condition that Barge give false testimony and procure the assistance of two other former employees of appellants. The affidavit showed definitely that a number of answers given by Barge on vital subjects were false and were known by Wheeler to be false when he used them in evidence in the case. The trial court denied the motion "without prejudice to the defendants to proceed by independent action as otherwise provided by rule and statute."

Normally, of course, the granting of a new trial, and probably the vacating of a judgment under Rule 60(b), rests within the sound discretion of the trial judge. The Rule is a good one and should be applied unless the circumstances are ex-

2. And see to the same effect 20 American Jurisprudence, Evidence, § 599, pp. 510–511; Restatement of the Law of Agency, §§ 286 et seq.; IV Wigmore on Evidence, Third Edition, § 1048 and § 1068 et seq. And cf. Jacksonville Paper Co. v. N. L. R. B., 5 Cir., 1943, 137 F.2d 148; Barclay v. Howell's Lessee, 6 Pet. 498, 31 U.S. 498, 8 L.Ed. 477; Union Packet Co. v. Clough, 20 Wall. 528, 87 U.S. 528, 22 L.Ed. 406; American Life Ins. Co. v. Mahone, 21 Wall. 152, 88 U.S. 152, 22 L.Ed. 593; Vicksburg & M.

R. Co. v. O'Brien, 119 U.S. 99, 7 S.Ct. 118, 30 L.Ed. 299; Marchand v. Griffon, 140 U.S. 516, 11 S.Ct. 834, 35 L.Ed. 527; and Perper v. Sonnabend, 5 Cir., 1955, 221 F.2d 142.

The authorities cited in the majority opinion do not, in my view, sustain its holding.

3. E. g., Georgia Casualty Co. v. Waldman, 5 Cir., 1931, 53 F.2d 24, 26; Ward v. United States, 5 Cir., 1938, 96 F.2d 189, 192, and Young v. United States, 5 Cir., 1938, 97 F.2d 200, 117 A.L.R. 316.

ceptional. But we have never looked upon it as a fetish requiring unvarying fealty in the face of fact and reality. Cf. Prudential Insurance Co. v. Gilroy, 5 Cir., 1946, 154 F.2d 382; Commercial Credit Corp. v. Pepper, 5 Cir., 1951, 187 F.2d 71; Ferrell v. Trailmobile, Inc., 5 Cir., 1955, 223 F.2d 697; Complete Auto Transit, Inc. v. Floyd, 5 Cir., 1957, 249 F.2d 396; Whiteman v. Pitrie, 5 Cir., 1955, 220 F.2d 914, 920 et seq., and Sunray Oil Corp. v. Allbritton, 5 Cir., 1951, 188 F.2d 751.

The rule announced by the cases cited in the majority opinion is based upon the assumption that the trial court has at least heard the recanting witness testify at the trial, and has obtained the "feel" of the case so that it is in much better position than we could possibly be to decide whether the recanter told the truth when he gave his testimony or in his recantation. The principles governing such cases is very much the same as those applied under the "clearly erroneous" doctrine established by Rule 52 F.R.C.P.

In both instances the rule vesting such a controlling measure of discretion with the trial judge is greatly relaxed where he did not have the advantage of seeing the witnesses testify. This Court pointed out the relative weights attaching to such findings in Galena Oaks Corp. v. Scofield, 1954, 218 F.2d 217, 219, and the Court of Appeals for the Sixth Circuit recently reviewed the authorities and reached the conclusion that, in all of the circuits, the rule was followed that the appellate court would not accept the findings of a trial judge as final unless he had better opportunity of judging the credibility of the witnesses than the appellate court. Seagrave Corp. v. Mount, 1954, 212 F.2d 389. And cf. 5 Moore's Federal Practice, Second Edition, p. 2637 et seq. and the authorities there discussed.

In this case the trial court had before it only the deposition of Barge and his recanting affidavit, both of which are before us. Whether the affidavit presents enough of substance to support an order under Rule 60 is, therefore, a question of law. Where, as here, such serious charges are made I think the court below should have vacated the judgment and granted a new trial in which Barge could be compelled to testify either by deposition or attendance upon the trial. His evidence is, in my opinion, too important to be left in the realm of doubt, as is done in the record before us. For these reasons I respectfully dissent.

Rehearing denied: CAMERON, Circuit Judge, dissenting.